1
2
3
4
5

MORRIS LAW GROUP
Ryan M. Lower, Bar No. 9108
Email: rml@morrislawgroup.com
411 E. Bonneville Ave., Ste. 360
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile:   (702) 474-9422

6
7
8
9
10
11
12

CARLTON FIELDS JORDEN BURT, P.A.
Frank G. Burt (to be admitted *pro hac vice*)
Email: fburt@carltonfields.com
Brian P. Perryman (to be admitted *pro hac vice*)
Email: bperryman@carltonfields.com
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

13
14
15

Attorneys for Defendants
American Security Insurance Company,
American Bankers Insurance Company of Florida,
John A. Frobose, and Katherine A. McDonald

16

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

17
18
19
20
21
22
23
24
25
26
27
28

PAUL D.S. EDWARDS,

            Plaintiff,

    v.

EFG COMPANIES, a/d/b/a EFG
AGENCY, INC., a/d/b/a
EFGUSA.COM, a/d/b/a ENTERPRISE
FINANCIAL GROUP, INC., and
VEHICLE PROTECTION
DEPARTMENT, LLC, and AMERICAN
SECURITY INSURANCE CO., and
AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA, and
RETICULATED ADMINISTRATIVE
SERVICES, INC., and BRICKELL
FINANCIAL SERVICES-MOTOR
CLUB INC., a/d/b/a ROAD
AMERICA MOTOR CLUB, INC.,

) Case No.:
)
)
)
) **NOTICE OF REMOVAL**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

a/d/b/a ROAD AMERICA MOTOR )
CLUB, and JOHN PAPPANASTOS, )
and JASON RHODEN, a/k/a JR )
RHODEN, and JOHN AUGUST )
FROBOSE, a/k/a JOHN FROBOSE, )
and KATHERINE A. MCDONALD, )
and DENNIS MC NAIR FANTIS, )
a/k/a DENNIS M. FANTIS, and )
RUBEN SANTOS MARTIN, )
                                                    )
                          Defendants.      )
                                                    )
_____)

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, defendants American Security Insurance Company, American Bankers Insurance Company of Florida, John A. Frobose, and Katherine A. McDonald (collectively, "the Removing Defendants") hereby remove the above-captioned case from the Eighth Judicial District Court, Clark County, Nevada ("State Court"), in which court this case was commenced, to the United States District Court for the District of Nevada, being the judicial district in which the case is pending.  In support of this removal, the Removing Defendants state the following:

1.    This is a civil action brought by plaintiff Paul D.S. Edwards, who asserts claims for relief based on alleged violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, and that Act's implementing regulations (including 47 C.F.R. § 64.1200), as well as a variety of Nevada statutes and common laws.  Each claim for relief asserted commonly arises out of Mr. Edwards' allegation that defendants placed, or caused to be placed, "multiple illegal, unauthorized, deceptive and unsolicited telemarketing and solicitation calls to Plaintiff's residential and wireless telephone numbers."

2.    Mr. Edwards originally filed this case in the State Court on or about December 5, 2017.  The case was assigned number A-17-765684-C.

2

The Amended Complaint (the operative affirmative pleading) was filed on or about December 26, 2017.  A true and correct copy of the Amended Complaint, together with all other process, pleadings, and orders served upon the removing defendants is attached hereto as Exhibit A.

3.      "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons … to file the notice of removal." 28 U.S.C. § 1446(b)(2)(C).  Here, Mr. Frobose and Ms. McDonald have not yet been properly served process.  American Security and American Bankers were each served with the Summons and Amended Complaint on January 3, 2018.  Thirty days have not yet elapsed from service of process on these defendants.  Removal is therefore timely. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding "that a named defendant's time to remove is triggered by simultaneous serve of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after an apart from the service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

4.      All Removing Defendants and other defendants have advised the undersigned Removing Defendants' counsel that they consent to the removal.  *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("[T]he filing of a notice of removal can be effective without individual consent documents on behalf of each defendant.  One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.").

5.      Removal is proper under 28 U.S.C. §§ 1331 and 1441(a) because certain of Mr. Edwards' claims for relief involve federal questions.  Specifically, Mr. Edwards asserts that certain of his claims arise under 47 U.S.C. § 227 and that statute's implementing regulations.  This is therefore a

case of which this Court has original jurisdiction under 28 U.S.C. § 1331, and may be removed to this Court pursuant to 28 U.S.C. § 1441(a).  *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (holding that "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA").

6.     Furthermore, the Court may exercise supplemental jurisdiction over the state-law claims for relief pursuant to 28 U.S.C. § 1367(a) because those claims that are so related to the federal-question claims that they form part of the same case or controversy.  As noted, each of the state-law claims arise out of the same series of allegedly unlawful telephone calls made to Mr. Edwards that give rise to his claims under federal law.

7.     The State Court is located within this judicial district.  28 U.S.C. § 108.  Venue is therefore proper under 28 U.S.C. § 1441(a).

8.     Pursuant to 28 U.S.C. § 1446(d) and Fed. R. Civ. P. 5, written notice of this removal is being served on Mr. Edwards and, in addition, is being filed with the Clerk of the State Court.

9.     The Removing Defendants reserve the right to file additional support for this Notice of Removal by way of declarations, deposition testimony, expert testimony, discovery responses, supplemental memoranda, and/or legal argument.

10.    The Removing Defendants reserve all defenses that they may have, including that the Amended Complaint fails to state a claim upon which relief can be granted.

11.    The Removing Defendants do not demand a jury trial.

WHEREFORE, this case is hereby removed to the United States District Court for the District of Nevada.

MORRIS LAW GROUP

411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

4

MORRIS LAW GROUP

By: _____
    Ryan M. Lower, Bar No. 9108
    411 E. Bonneville Ave., Ste. 360
    Las Vegas, Nevada 89101

CARLTON FIELDS JORDEN BURT, P.A.
Frank G. Burt (to be admitted *pro hac vice*)
Brian P. Perryman (to be admitted *pro hac vice*)
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007

Attorneys for Defendants
American Security Insurance Company,
American Bankers Insurance Company of
Florida, John A. Frobose, and Katherine A.
McDonald

MORRIS LAW GROUP
411 E. BONNEVILLE AVE., STE. 360 · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of MORRIS LAW GROUP, and that the foregoing **NOTICE OF REMOVAL** was served via first-class United States mail, postage prepaid on the following:

TO:

Paul D.S. Edwards
713 Wheat Ridge Lane, Unit 203
Las Vegas, Nevada 89145

SHIELDS LEGAL GROUP, P.C.
Bart F. Higgins
R. Brian Shields
16301 Quorum Drive
Suite 250B
Addison, Texas 75001

DATED this 23rd day of January, 2018.

By: _____

6

# Exhibit A

# Exhibit A - Eighth Judicial District Court Amended Complaint, with all other process, pleadings, and orders served upon Removing Defendants



CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA



*18-000002458*

---

PAUL D.S. EDWARDS,

PLAINTIFF(S)

VS.

AMERICAN SECURITY INSURANCE COMPANY,
ET AL;

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, EXHIBIT

| | |
|---|---|
| CASE #: | A-17-765684-C |
| COURT: | DISTRICT COURT |
| COUNTY: | CLARK |
| DFS-SOP #: | 18-000002458 |

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by PROCESS SERVER on Thursday, January 4, 2018 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, January 5, 2018 to the designated agent for the named entity as shown below.

AMERICAN SECURITY INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent fillings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

PAUL D.S. EDWARDS
713 WHEAT RIDGE LANE, UNIT 203,
LAS VEGAS, NV 89145

CA1



SUMM

# DISTRICT COURT,
# CLARK COUNTY, NEVADA

RECEIVED AS STATUTORY REGISTERED AGENT
on 04 January, 2018 and served on defendant or named party on 05 January, 2018
by the Florida Department of Financial Services

PAUL D.S. EDWARDS,

**Plaintiff,**

*vs.*

EFG COMPANIES, a/d/b/a EFG AGENCY, INC.,
a/d/b/a EFGUSA.COM,
a/d/b/a ENTERPRISE FINANCIAL GROUP, INC.,
and VEHICLE PROTECTION DEPARTMENT, LLC,
and AMERICAN SECURITY INSURANCE CO.,
and AMERICAN BANKERS INSURANCE COMPANY OF
FLORIDA,
and RETICULATED ADMINISTRATIVE SERVICES, INC.,
and BRICKELL FINANCIAL SERVICES-MOTOR CLUB INC.,
a/d/b/a ROAD AMERICA MOTOR CLUB, INC.,
a/d/b/a ROAD AMERICA MOTOR CLUB,
and JOHN PAPPANASTOS,
and JASON RHODEN, a/k/a JR RHODEN,
and JOHN AUGUST FROBOSE, a/k/a JOHN FROBOSE,
and KATHERINE A. MCDONALD,
and DENNIS MC NAIR FANTIS, a/k/a DENNIS M. FANTIS,
and RUBEN SANTOS MARTIN,
and DOES I-X, and ROE CORPORATIONS XI-XX, et al.

**Defendants.**

CASE NO.:  A-17-765684-C

DEPT. NO.:  XXXII

## SUMMONS - CIVIL

1/4/18

MCN. No. 111.

(is a certified process server in the
Circuit and County Courts
and for the Second Judicial Circ

---

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR
BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

TO THE DEFENDANT[S]:  A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

1.  If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of
    service, you must do the following:

    (a)  File with the Clerk of this Court, whose address is shown below, a formal written response to the
         Complaint in accordance with the rules of the Court, with the appropriate filing fee.
    (b)  Serve a copy of your response upon the attorney whose name and address is shown below.

2.  Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result
    in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of
    money or property or other relief requested in the Complaint.

3.  If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be
    filed on time.

4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members
    and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive
    pleading to the Complaint.

Submitted by:
Name:            PAUL D.S. EDWARDS
Address:         713 Wheat Ridge Lane, Unit 203
City/State/Zip:  Las Vegas, Nevada 89145
Telephone No:  702.341.1776
Attorney for:   Plaintiff *pro se*

STEVEN D. GRIERSON, CLERK OF COURT
By:    KADIRA BECK
Deputy Clerk
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

NOTE:  When service is by publication, add a brief statement of the object of the action.
See Nevada Rules of Civil Procedure 4(b).

Electronically Filed
12/26/2017 2:08 PM
Steven D. Grierson
CLERK OF THE COURT

1  **ACOMJD**
   PAUL D.S. EDWARDS,
2  713 Wheat Ridge Lane, Unit 203,
3  Las Vegas, Nevada 89145
   Landline Telephone:  702.341.1776
4  Cellular Telephone:  702.893.1776
   Email: pauldse@pauldsedwards.com
5  Plaintiff *pro se*

6

7               **DISTRICT COURT,**

8            **CLARK COUNTY, NEVADA**

9

10 PAUL D.S. EDWARDS,                    | **CASE NO.:**  A-17-765684-C

11          **Plaintiff,**               | **DEPT. NO.:**  XXXII

12

13      *vs.*

14 EFG COMPANIES, a/d/b/a EFG AGENCY, INC.,    **AMENDED COMPLAINT**
   a/d/b/a EFGUSA.COM,                          **FOR DAMAGES,**
15 a/d/b/a ENTERPRISE FINANCIAL GROUP, INC.,
   and VEHICLE PROTECTION DEPARTMENT, LLC,    **STATUTORY INJUNCTIVE**
16 and AMERICAN SECURITY INSURANCE CO.,              **RELIEF,**
17 and AMERICAN BANKERS INSURANCE
   COMPANY OF FLORIDA,                                **AND,**
18 and RETICULATED ADMINISTRATIVE SERVICES,
   INC.,                                     **DEMAND FOR TRIAL BY**
19 and BRICKELL FINANCIAL SERVICES-MOTOR            **JURY**
   CLUB INC.,
20 d/b/a ROAD AMERICA MOTOR CLUB, INC.,       **ARBITRATION**
21 d/b/a ROAD AMERICA MOTOR CLUB,        **EXEMPTION CLAIMED**
   and JOHN PAPPANASTOS,
22 and JASON RHODEN, a/k/a JR RHODEN,
   and JOHN AUGUST FROBOSE,                   (ACTION IN EQUITY)
23 a/k/a JOHN FROBOSE,                            STATUTORY
   and KATHERINE A. MCDONALD,                 INJUNCTIVE RELIEF
24 and DENNIS MC NAIR FANTIS,                    PURSUANT TO
   a/k/a DENNIS M. FANTIS,                  47 U.S.C. § 227(b)(3)
25 and RUBEN SANTOS MARTIN,                 47 U.S.C. § 227(c)(5)
   and DOES I-X,
26 and ROE CORPORATIONS XI-XX, et al.

27          **Defendants.**

28

# I.

## **INTRODUCTION**

1.      This is an action for statutory damages, actual damages, punitive/exemplary damages and injunctive relief[1] brought by an individual consumer for Defendants' violations of the—

(i)      Telephone Consumer Protection Act of 1991, Public Law 102-243, December 20, 1991, which amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 et seq., by adding a new section, 47 U.S.C. § 227 et seq. (**"TCPA"**), as amended; Title 47-Telecommunication Chapter I-Federal Communications Commission Part 64-Miscellaneous Rules Relating to Common Carriers-Subpart L-Restrictions on Telephone Solicitation Sec. 64.1200,[2] Delivery Restrictions (**"Implementing Rules"**), as amended; The Communications Act of 1934, 47 U.S.C. § 151, et seq.(**"TCA"**), as amended; and the Telephone Sales Rule, 16 C.F.R. Part 301 (**"TSR"**) as amended;

(ii)     Nevada Revised Statutes (**"NRS"**), including, but not limited to, 41.600(e), 42.005, 201.255(2), 228.540-228.620, 597.812-597.818,598.0903-598.0999 (including, but not limited to 598.0915(15), 598.0916, 598.0918, 598.092, and 598.0923(3)), 598.0977, 599B.080-599B.145, 599B.270-599B.300 and 707.910(2)-707.920, as amended; and,

(iii)    Defendants intentional invasion into Plaintiff's expectation of privacy and intrusion into the solitude and seclusion expected by Plaintiff in his home.

Plaintiff asserts, alleges and maintains that the above violations were perpetrated (either individually or in concert with others, and either directly or indirectly) by Defendants EFG COMPANIES, a/d/b/a EFG AGENCY, INC., a/d/b/a EFGUSA.COM, a/d/b/a ENTERPRISE FINANCIAL GROUP, INC., and VEHICLE PROTECTION DEPARTMENT, LLC., and AMERICAN SECURITY INSURANCE CO., and AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, and RETICULATED ADMINISTRATIVE SERVICES, INC., and BRICKELL FINANCIAL SERVICES-MOTOR CLUB INC., d/b/a ROAD AMERICA MOTOR CLUB, INC., d/b/a ROAD AMERICA MOTOR CLUB, and VEHICLE PROTECTION DEPARTMENT, LLC., and JOHN PAPPANASTOS, and JASON RHODEN, a/k/a JR RHODEN, and JOHN AUGUST FROBOSE, a/k/a JOHN FROBOSE, and KATHERINE A. MCDONALD, and DENNIS MC NAIR FANTIS, a/k/a DENNIS M. FANTIS, and RUBEN SANTOS MARTIN, and DOES I-X, and ROE CORPORATIONS XI-XX, et al.(**collectively "Defendants"**).

---

[1]*See* 47 USC 227(c)(5) & 47 USC 227(b)(3), that (statutorily) provides for injunctive relief.
[2]See 47 C.F.R. 64.1200 (a)(1) & (2); (b)(1) & (2); (c)(2); f (2) & (3); and (d)(1).

1    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the

2    Defendants, and each of them (either individually or in concert with others, and either directly or

3    indirectly) knowingly, willingly and willfully developed, conspired, participated in and was

4    complicit in each of the illegal acts complained of herein.

5    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains [that

6    the] Defendants, and each of them (either individually or in concert with others, and either directly

7    or indirectly)— were the causation of *multiple illegal, unauthorized, deceptive and unsolicited*

8    *telemarketing and solicitation telephone calls* to Plaintiff's residential and wireless telephone

9    numbers (702.341.1776 / 702.893.1776)— totally disregarding the rights of the Plaintiff, and by

10   ignoring federal and state laws.

11   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the

12   Defendants, and each of them (either individually or in concert with others, and either directly or

13   indirectly) knowingly, willingly and willfully *invaded into Plaintiff's expectation of privacy and*

14   *intruded into the solitude and seclusion expected by Plaintiff* in his home.

## II.

## JURISDICTION AND VENUE

17   **2.**    Jurisdiction of this Court is attained pursuant to the Telephone Consumer Protection

18   Act, 47 U.S.C. § 227 as amended, and the FCC's implementing rules[3] that explicitly provides for a

19   private right of action in state courts[4] for violations of the TCPA and for violations of the regulations

20   promulgated pursuant to the TCPA. Jurisdiction is proper in Nevada state courts.

21   **3.**    Venue is proper in the above titled court because Defendants, and each of them, at

22   all times relevant and material herein, committed the illegal acts complained of herein, and transacted

23   those illegal acts within the city of Las Vegas, the county of Clark, and the state of Nevada.

24

25   [3]47 C.F.R. Part 64 Subpart 1200 and Part 68 Subpart 318.

26   [4]Plaintiff is authorized, pursuant to 47 U.S.C. § 227(b)(3), to file actions in states' courts to enjoin violations and enforce compliance with the TCPA and the regulations issued pursuant to the TCPA,

27   and to obtain actual damages or damages of **$500 for each violation**, whichever is greater, and up to treble that amount for each violation committed "willfully" or "knowingly." *See Edwards v. Direct*

28   *Access, LLC*, 124 P.3d 1158 (Nev. 12/29/2005).

### III.

### PARTIES

#### (Plaintiff)

4.      That at all times relevant and material herein Plaintiff PAUL D.S. EDWARDS was and continues to be a natural person who resides in Las Vegas, Clark County, Nevada.

5.      That at all times relevant and material herein Plaintiff PAUL D.S. EDWARDS was and continues to be a natural person who resides in Las Vegas, Clark County, Nevada, and is a "person" within the meaning of 18 U.S.C. § 1961(3), and TCA, 47 U.S.C. § 153(32).

6.      That at all times relevant and material herein Plaintiff PAUL D.S. EDWARDS is a "person" pursuant to the TCA, Title I, Sec. 3(i).

#### (Defendants)

#### (1)

#### EFG COMPANIES, a/d/b/a EFG AGENCY, INC., a/d/b/a EFGUSA.COM, a/d/b/a ENTERPRISE FINANCIAL GROUP, INC.

7.      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG COMPANIES, a/d/b/a EFG AGENCY, INC., a/d/b/a EFGUSA.COM, a/d/b/a ENTERPRISE FINANCIAL GROUP, INC. **("EFG")** was a *foreign corporation* formed under the laws of the state of Texas.

8.      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG was incorporated within the state of Nevada as a *foreign corporation*.

9.      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG never attempted to obtain, nor obtained any type of business license to conduct any type of business activities, practices and operations within the state of Nevada; or Clark County, Nevada; or in Las Vegas, Nevada— consequently, Defendant EFG was conducting it's business activities *illegally* within the state of Nevada.

10.      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG held itself out as having its corporate headquarters located at 122 West Carpenter Freeway, Sixth Floor, Irving, Dallas County, Texas.

11.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG, by, through and with the assistance and approval of its officers, directors, managers, employees, representatives and agents, utilized and incorporated *illegal, unauthorized and deceptive [autodialed] telemarketing*[5] *and solicitation* telephone calls to induce Plaintiff, and others, into purchasing Defendants' products and services.

12.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG, as part of its products and services, held itself out as representing and being authorized by Ford Motor Company to sell Defendant EFG' products and services.

13.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG hired, contracted with, and retained the services offered by Defendant JASON RHODEN, a/k/a JR RHODEN and Defendant VEHICLE PROTECTION DEPARTMENT, LLC, to initiate a telemarketing and solicitation campaign to *sell to Plaintiff, and others located in Nevada, Defendants' products and services.*

14.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG holds itself out as the *Administrator* for the extended warranty contract that each *telemarketer attempted to sell to Plaintiff through the utilization of illegal, unauthorized and deceptive telemarketing and solicitation* telephone calls to Plaintiff's residential and wireless telephone numbers (702.441.1776 / 702.893.1776). A copy the extended warranty contract is attached hereto and incorporated herein as **Exhibit 1**.

. . .

. . .

. . .

_____

[5]The FCC's rules define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." The rules define "advertisement" as "any material advertising the commercial availability or quality of any property, goods or services." All calls (and text messages) subject to the prohibition that meet these definitions will be subject to the new "prior express written consent" requirement.

15.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG, by, through and with the assistance and collaboration of its officers, directors, managers, employees, representatives, agents and contractors, conducted its *illegal, unauthorized and deceptive telemarketing and solicitation* business activities, practices and techniques within the County of Clark, and the City of Las Vegas, and the State of Nevada— consequently, Defendant EFG was conducting it's business activities *illegally* within the state of Nevada.

16.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG by, through and with the assistance and collaboration of its officers, directors, managers, employees, representatives, agents and contractors earns tens-of-thousands of dollars a year by engaging in *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls* to landline and wireless telephone numbers without [first] obtaining the mandated written/oral consent[6] to place, or cause to be placed such unsolicited telephone calls.

17.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG engaged in, or caused to be engaged in, telephone telemarketing and solicitations to Plaintiff's residential and wireless telephone numbers (702.341.1776 / 702.893.1776) that has been on the National Do-Not-Call Registry[7] established and maintained by the Federal Trade Commission under 16 Code of Federal Regulations § 310.

---

[6] The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (i) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (ii) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods or services. Finally, the definition notes that "the term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law. See, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278, ¶ 68 (Feb. 15, 2012) **("2012 Report and Order")**("Once our written consent rules become effective, however, an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls absent prior written consent.").

[7] Plaintiff's telephone numbers has been on the National Do-Not-Call Registry since its inception.

-6-

**18.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant EFG (either individually or in concert with others, and either directly or indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

**(2)**

**VEHICLE PROTECTION DEPARTMENT, LLC**

**19.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VEHICLE PROTECTION DEPARTMENT, LLC, **("VPD")** was a *foreign corporation* formed under the laws of the state of California.

**20.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD never incorporated itself within the state of Nevada.

**21.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD holds itself out as having its business located at 2961 West MacArthur Boulevard, Suite 209, Costa Mesa, CA.[8]

**22.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD was neither incorporated with the state of Nevada, nor obtained, or attempted to obtain any type of business license to conduct any type of business practices, activities and operations within Nevada, or Clark County, or in Las Vegas— consequently, Defendant VPD was conducting it's business activities *illegally* within the state of Nevada.

**23.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD is, in pertinent part, in the *telemarketing and solicitation* business of selling [after market] vehicle warranties for the Defendants (and each of them) through the utilization of *illegal and deceptive* telemarketing and solicitation telephone calls such as those complained of herein. See Exhibits 1 & 2.

---

[8]In an email to Plaintiff, Defendant VPD [also] holds itself out as having a business location at 2024 North Broadway, 3rd  Floor, Santa Ana, CA. A copy of that email is attached hereto and incorporated herein as **Exhibit 2**.

-7-

24.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD (by, for or on behalf of Defendants, and each of them) made, or caused to be made, telemarketing and solicitation telephone calls to Plaintiff's residential and wireless telephone numbers (702.341.1776 / 702.893.1776) located at Las Vegas, Nevada— without receiving Plaintiff's consent to contact him through telemarketing activities.

25.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD made, or caused to be made, telephone solicitations to Plaintiff's residential and wireless telephone numbers (702.341.1776 / 702.893.1776) that has been on the National Do-Not-Call Registry[9] established and maintained by the Federal Trade Commission under 16 Code of Federal Regulations§ 310.

26.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD's website is registered to David Cunningham, 2183 Fairview Rd., Costa Mesa, CA 92627, 888.502.4697.

27.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD, in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral consent[10] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls*.

28.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant VPD (either individually or in concert with others, and either directly or indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

---

[9]Plaintiff's telephone numbers has been on the National Do-Not-Call Registry since its inception in 2003.

[10]See *n.6.*

**(3)**

**AMERICAN SECURITY INSURANCE CO.**

29.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant AMERICAN SECURITY INSURANCE CO.[11] (**"ASIC"**) is a *foreign corporation* formed under the laws of the state of Deleware.

30.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ASIC holds itself out as having its "statutory home office" located at 2711 Centerville Road, Suite 400, Wilmington, DE, and its "main administrative offices" located at 260 Interstate North Circle, SE, Atlanta, GA.

31.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ASIC was neither incorporated with the state of Nevada, nor obtained, or attempted to obtain any type of business license to conduct any type of business practices, activities and operations within Nevada, or Clark County, or in Las Vegas.

32.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ASIC is one of the insurers for the extended warranty contract issued by Defendant EFG (the *Administrator* for the extended warranty contract) that was offered to Plaintiff during the *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls* to Plaintiff by Defendant VPD. See Exhibit 1.

33.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ASIC, in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral consent[12] to place, or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls*.

---

[11]Defendant AMERICAN SECURITY INSURANCE CO is a directly owned subsidiary of Interfinancial Inc., a Georgia corporation. In turn, Interfinancial Inc. is a wholly owned subsidiary of Assurant, Inc., a Delaware insurance holding company.

[12]See *n.6.*

**34.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ASIC (either individually or in concert with others, and either directly or indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

**(4)**

**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA**

**35.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA[13] (**"ABIC"**) is a *foreign corporation* organized under the laws of the state of Florida.

**36.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ABIC holds itself out as having its statutory home office and main administrative offices located at 11222 Quail Roost Drive, Miami, FL.

**37.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ABIC was neither incorporated with the state of Nevada, nor obtained, or attempted to obtain any type of business license to conduct its business practices and operations with Nevada, or Clark County, or in Las Vegas.

**38.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ABIC is one of the insurers for the extended warranty contract issued by Defendant EFG (the *Administrator* for the extended warranty contract) that was offered to Plaintiff, by Defendant VPD, during the *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls* to Plaintiff. See Exhibit 1.

**39.**     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant ABIC, in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls,*

---

[13]Defendant AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA is a subsidiary of ASSURANCE, Inc.

1   to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral

2   consent[14] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation*

3   *telephone calls*.

4       **40.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5   that Defendant ABIC (either individually or in concert with others, and either directly or indirectly)

6   was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

7                     **(5)**

8           **RETICULATED ADMINISTRATIVE SERVICES, INC.**

9       **41.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

10   that Defendant RETICULATED ADMINISTRATIVE SERVICES, INC. **("RASI")** is a *foreign*

11   *corporation* formed under the laws of the state of Texas.

12       **42.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

13   that Defendant RASI holds itself out as having its corporate offices located at 122 West Carpenter

14   Freeway, 6th Floor, Irving, Texas [the identical corporate address for Defendant EFG].

15       **43.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

16   that Defendant RASI [also] holds itself out as an *Administrator* for the extended warranty contract

17   issued by Defendant EFG (the *Administrator* of the extended warranty) offered to Plaintiff, by

18   Defendant VPD, through *illegal, unauthorized and deceptive telemarketing and solicitation*

19   *telephone calls*. See Exhibit 1.

20       **44.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

21   that Defendant RASI never obtained, or attempted to obtain any type of business license to conduct

22   its business practices, activities and operations within Nevada, or Clark County, or in Las Vegas.

23       **45.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

24   that Defendant RASI, in collaboration with Defendants, and each of them (either individually or in

25   concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year

26   through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*,

27   

---

28   [14]See *n.6*.

1  to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral

2  consent[15] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation*

3  *telephone calls*.

4      **46.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5  that Defendant RASI (either individually or in concert with others, and either directly or indirectly)

6  was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

7  **(6)**

8  **BRICKELL FINANCIAL SERVICES-MOTOR CLUB INC.,**
**d/b/a ROAD AMERICA MOTOR CLUB, INC.,**
9  **d/b/a ROAD AMERICA MOTOR CLUB,**

10      **47.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

11  that Defendant BRICKELL FINANCIAL SERVICES-MOTOR CLUB INC., a/d/b/a ROAD

12  AMERICA MOTOR CLUB, INC., a/d/b/a ROAD AMERICA MOTOR CLUB **(collectively**

13  **"BRICKELL")** is a Florida corporation holding itself out as having its principal place of business

14  located at 7300 Corporate Center Drive, Suite 601, Miami, Florida.

15      **48.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

16  that Defendant BRICKELL [also] holds itself out as the *Administrator* offering [the] "Roadside

17  Services" for the extended warranty contract issued by Defendant EFG, that was offered to Plaintiff

18  during the *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls* to

19  Plaintiff. See Exhibit 1.

20      **49.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

21  that Defendant BRICKELL has never obtained, or attempted to obtain any type of business license

22  to conduct any type of business practices, activities and operations within Nevada, or Clark County,

23  or in Las Vegas.

24  . . .

25  . . .

26

27  [15]See *n.6.*

28  -12-

1     **50.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that Defendant BRICKELL, in collaboration with Defendants, and each of them (either individually

3    or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year

4    through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*,

5    to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral

6    consent[16] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation*

7    *telephone calls*.

8     **51.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9    that Defendant BRICKELL (either individually or in concert with others, and either directly or

10   indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

11                               **(7)**

12                   **JOHN PAPPANASTOS**

13    **52.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

14    that Defendant JOHN PAPPANASTOS (**"PAPPANASTOS"**), a natural person, held himself out,

15    and continues to hold himself out as the President, CEO and a Director of and for Defendant EFG

16    and President of and for Defendant RASI.

17    **53.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

18    that Defendant PAPPANASTOS, in his capacity as the President, CEO and a Director of and for

19    Defendant EFG, and President of and for Defendant RASI, formulated, directed, controlled, had the

20    authority to control and participated in the everyday business acts, practices and activities of, by and

21    for Defendants EFG and RASI— including authorizing and condoning the utilization of each *illegal,*

22    *unauthorized and deceptive* telemarketing and solicitation telephone call[s] complained of herein.

23    . . .

24    . . .

25    . . .

26

27   [16]See *n.6.*

28                            **-13-**

54.     That at all times relevant and material herein, Defendant PAPPANASTOS, in his capacity as the President, CEO and a Director of, by and for Defendant EFG, and President of, by and for Defendant RASI, oversees and provides leadership, direction, and guidance for all business activities of, for and on behalf of Defendants EFG and RASI, including Defendants EFG and RASI' *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls complained of herein.

55.     That at all times relevant and material herein, Defendant PAPPANASTOS, in his capacity as the President, CEO and a Director of and for Defendant EFG, and President of, by and for Defendant RASI, and in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral consent[17] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls.*

56.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant PAPPANASTOS (either individually or in concert with others, and either directly or indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

**(8)**

**JASON RHODEN, a/k/a JR RHODEN**

57.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant JASON RHODEN, a/k/a JR RHODEN **("RHODEN")**, a natural person, held himself out, and continues to hold himself out as the Owner and Manager of, by and for Defendant VPD.

58.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant RHODEN, in his capacity as the Owner and Manager of, by and for Defendant VPD, formulated, directed, controlled, had the authority to control and participated in the everyday

---

[17]See *n.6.*

**-14-**

1  business acts, practices and activities of, by and for Defendant VPD— including authorizing and

2  condoning the utilization of each *illegal, unauthorized and deceptive* telemarketing and solicitation

3  telephone call[s] complained of herein.

4      **59.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5  that Defendant RHODEN, in his capacity as the Owner and Manager of, by and for Defendant VPD,

6  oversees and provides leadership, direction, and guidance for all business activities of, for and on

7  behalf of Defendants VPD, including, but not limited to Defendants VPD' *illegal, unauthorized and*

8  *deceptive* telemarketing and solicitation telephone calls complained of herein.

9      **60.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

10  that Defendant RHODEN, in his capacity as the Owner and Manager of, by and for Defendant VPD,

11  and in collaboration with Defendants, and each of them (either individually or in concert with others,

12  and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal,*

13  *unauthorized and deceptive telemarketing and solicitation telephone calls*, to landline and wireless

14  telephone numbers, without [first] obtaining the mandated written/oral consent[18] mandated to place,

15  or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls.*

16     **61.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

17  that Defendant RHODEN, in his capacity as the Owner and Manager of, by and for Defendant VPD,

18  was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

19                                          **(9)**

20                  **JOHN AUGUST FROBOSE, a/k/a JOHN FROBOSE**

21     **62.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

22  that Defendant JOHN AUGUST FROBOSE, a/k/a JOHN FROBOSE **("FROBOSE")**, a natural

23  person, held himself out, and continues to hold himself out as the President, Chairman and Director

24  of, by and for Defendant ASIC.

25

26

_____

27  [18]See *n.6.*

28                                          **-15-**

63.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FROBOSE, as President, Chairman and Director of, by and for Defendant ASIC, formulated, directed, controlled, had the authority to control and participated in the everyday business acts, practices and activities of, by and for Defendant ASIC, including authorizing and condoning the utilization of each *illegal, unauthorized and deceptive* telemarketing and solicitation telephone call[s] complained of herein.

64.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FROBOSE, as President, Chairman and Director of, by and for Defendant ASIC, oversees and provides leadership, direction, and guidance for all business activities of, for and on behalf of Defendant ASIC, including the authorization and condoning of each *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls complained of herein.

65.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FROBOSE, as President, Chairman and Director of, by and for Defendant ASIC, and in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral consent[19] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls*.

66.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FROBOSE (either individually or in concert with others, and either directly or indirectly) was complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

. . .

. . .

. . .

---

[19]See *n.6.*

-16-

**(10)**

## KATHERINE A. MCDONALD

67.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant KATHERINE A. MCDONALD (**"MCDONALD"**), a natural person, held herself out, and continues to hold herself out as the President and Director of, by and for Defendant ABIC and a Director of, by and for Defendant ASIC.[20]

68.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MCDONALD as the President and Director of, by and for Defendant ABIC, and a Director of, by and for Defendant ASIC, formulated, directed, controlled, had the authority to control and participated in the everyday business acts, practices and activities of, by and for Defendant ABIC and Defendant ASIC, including authorizing and condoning the utilization of each *illegal, unauthorized and deceptive* telemarketing and solicitation telephone call[s] complained of herein.

69.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MCDONALD as the President and Director of, by and for Defendant ABIC, and a Director of, by and for Defendant ASIC, oversees and provides leadership, direction and guidance for all [the] business activities of, for and on behalf of Defendants ABIC and ASIC, including Defendant ABIC and ASIC' involvement in the placing, or causing the placing of each *illegal, unauthorized and deceptive* [autodialed] telemarketing and solicitation telephone calls complained of herein.

70.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MCDONALD, as the President and Director of, by and for Defendant ABIC, and a Director of, by and for Defendant ASIC, and in collaboration with Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and*

---

[20]Defendant MCDONALD is also Vice-President and a Director of, by and for Assurant Insurance Agency, Inc.

*solicitation telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated written/oral consent[21] mandated to place, or cause to be placed, such unsolicited *telemarketing and solicitation telephone calls.*

71.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant MCDONALD, as the President and Director of, by and for Defendant ABIC, and a Director of, by and for Defendant ASIC, was (either individually or in concert with others, and either directly or indirectly) complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

**(11)**

**DENNIS MC NAIR FANTIS, a/k/a DENNIS M. FANTIS**

72.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant DENNIS MC NAIR FANTIS, a/k/a DENNIS M. FANTIS (**"FANTIS"**), a natural person, held himself out, and continues to hold himself out as the President and Director of, by and for Defendant BRICKELL and President, Chairman and Director of, by and for Defendant ASIC.

73.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FANTIS, as the President and Director of, by and for Defendant BRICKELL, and President, Chairman and Director of, by and for Defendant ASIC, formulated, directed, controlled, had the authority to control and participated in the everyday business acts, practices and activities of, by and for Defendant BRICKELL and Defendant ASIC, including authorizing and condoning the utilization of each *illegal, unauthorized and deceptive* telemarketing and solicitation telephone call[s] complained of herein.

74.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant FANTIS, as the President and Director of, by and for Defendant BRICKELL, and President, Chairman and Director of, by and for Defendant ASIC, oversees and provides leadership, direction and guidance for all [the] business activities of, for and on behalf of Defendants

[21]See *n.6.*

-18-

1   BRICKELL and ASIC, including Defendant BRICKELL's and ASIC' involvement in the placing,

2   or causing the placing of each *illegal, unauthorized and deceptive* [autodialed] telemarketing and

3   solicitation telephone calls complained of herein.

4       **75.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5   that Defendant FANTIS, as the President and Director of, by and for Defendant BRICKELL, and

6   President, Chairman and Director of, by and for Defendant ASIC, and in collaboration with

7   Defendants, and each of them (either individually or in concert with others, and either directly or

8   indirectly), earns tens-of-thousands of dollars a year through the use of *illegal, unauthorized and*

9   *deceptive telemarketing and solicitation telephone calls*, to landline and wireless telephone numbers,

10  without [first] obtaining the mandated written/oral consent[22] mandated to place, or cause to be

11  placed, such unsolicited *telemarketing and solicitation telephone calls*.

12      **76.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

13  that Defendant FANTIS, as the President and Director of, by and for Defendant BRICKELL, and

14  President, Chairman and Director of, by and for Defendant ASIC, was (either individually or in

15  concert with others, and either directly or indirectly) complicit, authorized and sanctioned each of

16  the *illegal acts* complained of herein.

17                          **(12)**

18                  **RUBEN SANTOS MARTIN**

19      **77.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

20  that Defendant RUBEN SANTOS MARTIN **("MARTIN")**, a natural person, held himself out, and

21  continues to hold himself out as the President, CEO, Regional General Manager, and a Director by

22  and for Defendant BRICKELL,

23      **78.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

24  that Defendant MARTIN, as the President, CEO, Regional General Manager, and a Director by and

25  for Defendant BRICKELL, formulated, directed, controlled, had the authority to control and

26  _____

27  [22]See *n.6.*

28                          **-19-**

1  participated in the everyday business acts, practices and activities of, by and for Defendant

2  BRICKELL, including authorizing and condoning the utilization of each *illegal, unauthorized and*

3  *deceptive* telemarketing and solicitation telephone call[s] complained of herein.

4      **79.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

5  that Defendant MARTIN, as the President, CEO, Regional General Manager, and a Director by and

6  for Defendant BRICKELL, oversees and provides leadership, direction and guidance for all [the]

7  business activities of, for and on behalf of Defendants BRICKELL, including Defendant

8  BRICKELL's involvement in the placing, or causing the placing of each *illegal, unauthorized and*

9  *deceptive* [autodialed] telemarketing and solicitation telephone calls complained of herein.

10      **80.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

11  that Defendant MARTIN, as the President, CEO, Regional General Manager, and a Director by and

12  for Defendant BRICKELL, and in collaboration with Defendants, and each of them (either

13  individually or in concert with others, and either directly or indirectly), earns tens-of-thousands of

14  dollars a year through the use of *illegal, unauthorized and deceptive telemarketing and solicitation*

15  *telephone calls*, to landline and wireless telephone numbers, without [first] obtaining the mandated

16  written/oral consent[23] mandated to place, or cause to be placed, such unsolicited *telemarketing and*

17  *solicitation telephone calls.*

18      **81.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

19  that Defendant MARTIN, as the President, CEO, Regional General Manager, and a Director by and

20  for Defendant BRICKELL, was (either individually or in concert with others, and either directly or

21  indirectly) complicit, authorized and sanctioned each of the *illegal acts* complained of herein.

22      **82.**    That Plaintiff is unaware of the true names and legal capacities whether individual,

23  corporate, associate, or otherwise, of Defendants DOES I-X, and ROE CORPORATIONS XI-XX

24  sued herein inclusive, and therefore sues those Defendants and any Co-Defendants by such fictitious

25  names.

26  

27  [23]See *n.6.*

28                                              -20-

83.     That Plaintiff is informed and believes, and thereon alleges that each of the Defendants (EFG COMPANIES, a/d/b/a EFG AGENCY, INC., a/d/b/a EFGUSA.COM, a/d/b/a ENTERPRISE FINANCIAL GROUP, INC., and VEHICLE PROTECTION DEPARTMENT, LLC, and AMERICAN SECURITY INSURANCE CO., and AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, and RETICULATED ADMINISTRATIVE SERVICES, INC., and BRICKELL FINANCIAL SERVICES-MOTOR CLUB INC., d/b/a ROAD AMERICA MOTOR CLUB, INC., d/b/a ROAD AMERICA MOTOR CLUB, and VEHICLE PROTECTION DEPARTMENT, LLC., and JOHN PAPPANASTOS, and JASON RHODEN, a/k/a JR RHODEN, and JOHN AUGUST FROBOSE, a/k/a JOHN FROBOSE, and KATHERINE A. MCDONALD, and DENNIS MC NAIR FANTIS, a/k/a DENNIS M. FANTIS, and RUBEN SANTOS MARTIN, and DOES I-X, and ROE CORPORATIONS XI-XX, et al.), are in some way legally responsible and liable for the events referred to hereinafter, and proximately caused the damages alleged herein.

84.     That at all times relevant and material herein, Defendants, in doing the acts and omissions alleged herein, acted individually and/or through their officers, partners, directors, associates, agents, employees and co-conspirators, including, but not limited to the fictitious Defendants and any Co-Defendants named herein as DOES I-X and ROE CORPORATIONS XI-XX, each of whom was acting within the purpose and scope of that agency, employment and conspiracy, and said acts and omissions were known to, and authorized and ratified by, each of the other Defendants.

85.     That Plaintiff pray leave to insert said DOES I-X, and ROE CORPORATIONS XI-XX DOES' true names and legal capacities when ascertained.

. . .

. . .

. . .

# IV.

## FACTUAL ALLEGATIONS
### (First Set)

1.  **First Telemarketing/Solicitation Telephone Call to Plaintiff's Residential Telephone Number (June 8, 2017@3:16 p.m.):**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through eighty-five as aforementioned.

**86.**  That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant, and each of them (either individually or in concert with others, and either directly or indirectly) were the causation for the utilization of the telephone as its instrumentality[ies] of interstate commerce to place, or cause to be placed its *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls to Plaintiff's telephone numbers (702.341.1776 / 702.893.1776) as complained of herein.

**87.**  That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on June 8, 2017@3:16 p.m., Defendants (either individually or in concert with others, and either directly or indirectly)were the causation of an *illegal, unauthorized and deceptive autodialed telemarketing and solicitation telephone call* to Plaintiff's telephone number (702.341.1776) through the utilization of one (1) or more autodialers, **without first obtaining** *written or oral* [prior express] consent from the Plaintiff to receive such calls.

**88.**  That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that on June 8, 2017@3:16 p.m., Defendants (either individually or in concert with others, and either directly or indirectly) were the causation of an *illegal, unauthorized and deceptive* [*autodialed*] *telemarketing and solicitation telephone call* to Plaintiff's telephone number (702.341.1776) for the sole purpose of encouraging Plaintiff to purchase and invest in Defendants' goods or services.

. . .

. . .

. . .

-22-

89.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the June 8, 2017 (3:16 p.m.) *illegal, unauthorized and deceptive telemarketing and solicitation telephone call* to Plaintiff's telephone number was displayed (on Plaintiff's telephone caller ID **("CID")**) as originating from the telephone number 1.702.359.5568[24] and the location of Las Vegas NV.

90.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that he did not answer the [incoming] June 8, 2017 (3:16 p.m.) telephone call, nor did the caller leave any message.[25]

91.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that when Plaintiff called the 702.359.5568[26] telephone number, in order to discover who called, an outgoing message stated, in pertinent part—

>         "Thank you for calling the Vehicle Protection Department..."—

Plaintiff terminated the call, not speaking with anyone.

**2.      Second Telemarketing/Solicitation Telephone Call to Plaintiff's Wireless Telephone Number (June 9, 2017@11:41 a.m.):**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through ninety-one as aforementioned.

92.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant, and each of them (either individually or in concert with others, and either directly or indirectly) were the causation for the utilization of the telephone as its instrumentality[ies] of interstate commerce to place, or cause to be placed its *illegal, unauthorized and deceptive*

---

[24]Plaintiff maintains that this telephone number was intentionally "spoofed." The word "spoofed" has been defined as deliberately falsifying, altering, or manipulating the calling party[ies] telephone number and/or name relayed as the Caller ID information to disguise the identity of the calling party.

[25]The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call in that it is defined as "to communicate with or try to get into communication with a person by telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

[26]Number can not be called when preceded by "1."

1   telemarketing and solicitation telephone calls to Plaintiff's telephone number (702.341.1776 /
2   702.893.1776) as complained of herein.

3       93. That at all times relevant and material herein, Plaintiff asserts, alleges and
4   maintains that on June 9, 2017@11:41 AM, Defendants (either individually or in concert with others,
5   and either directly or indirectly)were the causation of an *illegal, unauthorized and deceptive*
6   *autodialed telemarketing and solicitation telephone call* to Plaintiff's wireless telephone number
7   (702.893.1776) through the utilization of one (1) or more autodialers, **without first obtaining**
8   *written or oral* [prior express] consent from the Plaintiff to receive such calls.

9       94. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains
10  that on June 9, 2017@11:41 a.m., Defendants (either individually or in concert with others, and either
11  directly or indirectly)were the causation of an *illegal, unauthorized and deceptive* [*autodialed*] *telemarketing*
12  *and solicitation telephone call* to Plaintiff's telephone number (702.893.1776) for the sole purpose of
13  encouraging Plaintiff to purchase and invest in Defendants' goods or services.

14      95. That at all times relevant and material herein, Plaintiff asserts, alleges and
15  maintains that the June 8, 2017 (3:16 p.m.) *illegal, unauthorized and deceptive telemarketing and*
16  *solicitation telephone call* to Plaintiff's telephone number was displayed (on Plaintiff's telephone
17  caller ID (**"CID"**)) as originating from the telephone number 1.702.359.5568[27] and the location of
18  NO NAME.

19      96. That at all times relevant and material herein, Plaintiff asserts, alleges and
20  maintains that when Plaintiff answered the June 8, 2017 (3:16 p.m.) *illegal, unauthorized and*
21  *deceptive telemarketing and solicitation telephone call,* the caller stated that he was calling from the
22  "Vehicle Protection Department"— Plaintiff terminated the call.[28]

23  . . .

24  . . .

25  . . .

26  _____

27  [27]See *n. 23.*
28  [28]See *n. 24.*

1    **3.     Third Telemarketing/Solicitation Telephone Call to Plaintiff's Residential Telephone Number (July 3, 2017@8:54 a.m.):**

2

3    Plaintiff repeats, realleges, and incorporates by reference paragraphs one through ninety-six

4    as aforementioned.

5    **97.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

6    maintains that Defendant, and each of them (either individually or in concert with others, and either

7    directly or indirectly) were the causation for the utilization of the telephone as its instrumentality[ies]

8    of interstate commerce to place, or cause to be placed its *illegal, unauthorized and deceptive*

9    telemarketing and solicitation telephone calls to Plaintiff's telephone number (702.341.1776 /

10   702.893.1776) as complained of herein.

11   **98.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

12   maintains that on July 3, 2017@8:54 a.m., Defendants (either individually or in concert with others,

13   and either directly or indirectly)were the causation of an *illegal, unauthorized and deceptive*

14   *autodialed telemarketing and solicitation telephone call* to Plaintiff's telephone number

15   (702.341.1776) through the utilization of one (1) or more autodialers, **without first obtaining**

16   *written or oral* [prior express] consent from the Plaintiff to receive such calls.

17   **99.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

18   maintains that on July 3, 2017@8:54 a.m., Defendants (either individually or in concert with others,

19   and either directly or indirectly) were the causation of an *illegal, unauthorized and deceptive*

20   *[autodialed] telemarketing and solicitation telephone call* to Plaintiff's telephone number

21   (702.341.1776) for the sole purpose of encouraging Plaintiff to purchase and invest in Defendants'

22   goods or services.

23   **100.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

24   maintains that the July 3, 2017 (8:54 a.m.) *illegal, unauthorized and deceptive <u>telemarketing and</u>*

25   *<u>solicitation telephone call</u>* to Plaintiff's telephone number was displayed (on Plaintiff's telephone

26

27

28                                              -25-

1    caller ID (**"CID"**)) as originating from the telephone number 1.702.359.5568[29] and the location of

2    Las Vegas, NV.

3          **101.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

4    maintains that when Plaintiff answered the July 3, 2017 (8:54 a.m.) incoming call, the caller[30] stated

5    he was calling from the Vehicle Protection Department regarding an extension of the mechanical

6    breakdown protection for Plaintiff's 2014 Ford Fusion.[31]

7          **102.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

8    maintains that Plaintiff advised the caller that the conversation was being recorded— the caller did

9    not object.

10          **103.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

11    maintains that caller McCalister advised Plaintiff there was a Ford Coverage Specialist on the other

12    line waiting to speak with Plaintiff.

13          **104.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

14    maintains that caller McCalister transferred me to a person identifying himself as "Daryl"— "Senior

15    Coverage Specialist for the 2014 Ford Fusion."

16          **105.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

17    maintains that "Daryl" stated, in pertinent part, the following:

18            "The reason for the call is, it looks like your vehicle factory warranty
              coverage has expired...and this is an opportunity for you to purchase

19            a protection plan...I'm sure you'd like to know what that would cover
              and costs..." (Daryl then transferred Plaintiff to another person

20            identified as a "Authorization" person).

21          **106.**    That at all times relevant and material herein, Plaintiff asserts, alleges and

22    maintains that Plaintiff was transferred to a person identifying himself as "Brandon" in the

23    Authorization Department. Brandon then stated, in pertinent part, the following:

24

25    [29]See *n.23.*

26    [30]The caller identified himself as [Marv or Mark or Martin (undistinguishable)] McCalister

27    [31]The milage displayed on Plaintiff's 2014 Fusion was [only] 9,000 miles— accordingly, the
   manufactures warranty had not expired.

28                        -26-

1         "Now the call is being recorded for the company's protection as well
2         as yours..." (Brandon then asked several questions regarding the milage, condition and use of the 2014 Ford Fusion). Brandon then
3         advised Plaintiff that the vehicle does qualify for the "highest level protection plan," and he will advise Daryl that of that.
        However, before transferring Plaintiff back to Daryl, Brandon told
4         Plaintiff that Plaintiff must accept or decline the offer at the end of the call.

5

6     **107.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

7 that Plaintiff was transferred back to Daryl, who made, in pertinent part, the following statements.

8         "I've got a 5 year, 125,000 plan...this is the highest level of coverage
        you can get...this is gonna cover you until August 3, 2022, or 126,000
9         miles on the odometer— whichever comes first. It will cover all the
        components on the vehicle, minus wear & tear items...this is really
10         the only type of policy that will cover computers and sensors and
        things like that...The deductible on the policy is $100.00— that's the
11         most that they'll charge you for any repair...towing is included, so if
        you are stuck they will tow you to the service department, free of
12         charge. They provide rental any time the vehicle is going to be in the
        shop, and you'll have 24 hour emergency roadside assistance with us
13         as well...if you break it down on an annual basis, the cost of the
        coverage comes out to just $579 a year...that work's out to $1.61
14         cents a day...the total for the policy comes out to just $2899.00. If you
        want to pay it in full, that is the least expensive way you can get this
15         plan. I can do this for $2300.00 paid-in-full...what most people do is
        take advantage of our interest free financing, and I've got a number
16         of different ways you can do this. Now the first option is the quick
        payment, which is the most aggressive way of paying it off...that
17         would be a $495.00 down payment. You'd have 12 interest free
        payments of $233.00, and then in one year's time the policy's paid in
18         full[32]...Second option is $395.00 down, and 15 payments $166.93, or
        you can do $295.00 down and we'd go 18 payments of $144.67...it'll
19         take 3 to 5 days for you to receive the new policy in the mail, and
        then you'll have a 30 day review period once you receive it...Now the
20         &295 down, you can do that with a credit card, debit card, or a check
        over the phone, so what would work best for you?

21

22     **108.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

23 that the following conversation took-place between Plaintiff and Daryl—

24         **Plaintiff:**     ...and what company is offering this?

25

26 _____

[32]This payment method, purportedly interest free, amounts to $3291— exceeding the "full price" of
27 the policy by $392.00.

28                                     **-27-**

| | | |
|---|---|---|
| **Daryl:** | | ...I'm calling you from the Vehicle Protection Department. We're the vendors for the mechanical breakdown protection plan, bought, sold, accepted and recognized throughout the 48 states nationwide... |
| **Plaintiff:** | | Can you email me something to read, or mail me something to read while we're talking so I can see exactly what's-what...I'm sure what your telling me is not the entire...policy. |
| **Daryl:** | | What details are you looking for—are you thinking about? |
| **Plaintiff:** | | (Plaintiff stated several examples)...all you've given me is a basic broad coverage, I'm sure it's more specific than that. Before I give you several-hundred dollars I want to be able at least read something... |
| **Daryl:** | | ...like I said. You have a 30 day review period, so that you'll have 30 days to read the plan and make sure... |
| **Plaintiff:** | | ...in order to do that I have to give you money first. Correct? |
| **Daryl:** | | Just a minimal down payment, which is fully refundable... |
| **Plaintiff:** | | ...again, you want me to give you money before I have anything to read, based on some broad information you gave me. I'm sure there's more to it than, then the basic information. I'd like to read, even a sample...so I know what I'm paying for... |
| **Daryl:** | | ...let me get you email address...(Plaintiff provided his Yahoo email address)...I'm going to email you a sample of the policy...(the policy emailed to Plaintiff is attached hereto as Exhibit 1) |
| **Plaintiff:** | | Plaintiff then advised Daryl that the number called by Defendants is on, and has been on the National DO-NOT-CALL Registry. The call was disconnected. |

## V.

## FACTUAL ALLEGATIONS
### (Second Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and eight as aforementioned.

**109.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants (either individually or in concert with others, and either directly or indirectly) were, and continue to be aware that autodialed telemarketing telephone calls are *illegal* and violative of the TCPA, unless the caller first obtains *written or oral* prior express consent from the called party. See, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act*

*of 1991*, FCC Report and Order, CG Docket No. 02-278, ¶ 68 (Feb. 15, 2012) (**"2012 Report and Order"**)("Once our written consent rules become effective, however, an entity will no longer be able to rely on non-written forms of express consent to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such calls absent prior written consent.").

     **110.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants (either individually or in concert with others, and either directly or indirectly) failed to take appropriate measures to prevent violations as those complained of herein.

     **111.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants (either individually or in concert with others, and either directly or indirectly) collaborated and worked in concert with each other to cause Defendants' *illegal, unauthorized and deceptive* **telemarketing and solicitation telephone calls** to Plaintiff's telephone numbers (702.341.1776 / 702.893.1776), without first obtaining (either) the written or verbal consent of the Plaintiff to receive such calls from Defendants.

     **112.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them did (either individually or in concert with others, and either directly or indirectly), violate several sections of Nevada's Revised Statutes (**"NRS"**); the Telephone Consumer Protection Act (**"TCPA"**), 47 U.S.C. §§ 227 *et seq.* (unless the context otherwise indicates); and the Rules and Regulations Implementing the TCPA, C.F.R. § 64.1200 *et seq.* (unless the context otherwise indicates)— by causing the "willful" and "knowing" transmissions[33] of *illegal, unauthorized and deceptive* **telemarketing and solicitation telephone calls to Plaintiff's**

---

[33]**"TRANSMIT," "TRANSMITTED, or "TRANSMISSION,"** as used herein, shall each mean any act leading to the eventual causing, placing, generating, disseminating, promulgating, broadcasting, propagating, telephoning or distribution of an artificial or human voice, or pre-recorded message, or a text message to a landline (hard-wired) or wireless telephone user. Each shall also mean the dispatching, for reception elsewhere, of a signal, message, text, or other form of information. **"TRANSMIT" "TRANSMITTED," or "TRANSMISSION,"** as used herein, shall not be limited to the final act prior to reception by a landline (hard-wired) or cellular telephone user, but shall include all acts materially advancing the causing, placing, generating, disseminating, promulgating, broadcasting, telephoning or distribution of an artificial or human voice, or pre-recorded message, or text message to a landline (hard-wired) or cellular telephone user.

1  **residential and wireless telephone numbers** (702.341.1776 / 702.893.1776) without first obtaining

2  the *written or oral express consent* from the Plaintiff to receive such calls.

3  **113.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

4  that Defendants, and each of them (either individually or in concert with others, and either directly

5  or indirectly) violated the NRS, TCPA and R&R by causing the "willful" and "knowing"

6  transmission of *illegal, unauthorized and deceptive* telemarketing and solicitation[34] telephone calls

7  to Plaintiff's residential and wireless telephone numbers (702.341.1776 / 702.893.1776) without first

8  obtaining Plaintiff's prior express consent, or any consent (either written or verbally) to receive such

9  calls, thus violating 47 U.S.C. §227(b)(1)(A)(iii), which prohibits any person within the United

10  States from making any call, other than for emergency purposes or with the prior express consent

11  of the recipient, through any Automatic Telephone Dialing System **("ATDS" or "autodialer"or**

12  **"autodialing")[35]** to telephone numbers assigned to a cellular telephone service.

13  **114.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

14  that Defendants, and each of them (either individually or in concert with others, and either directly

15  or indirectly) utilized one (1) or more ATDS to place, or cause to be placed three (3) *illegal,*

16  *unauthorized and deceptive **autodialed telemarketing and solicitation telephone calls*** to Plaintiff's

17  residential and wireless telephone numbers by, for, or on behalf of Defendants— calls that were not

18  for an emergency purposes and was transmitted without Plaintiff's prior express consent.

19  ———————————————

20  [34] The term "telephone solicitation" means the initiation of a telephone call or message for the
purpose of encouraging the purchase...of...goods, or services, which is transmitted to any person...47

21  C.F.R. 64.1200(c).

22  [35] The term **"AUTOMATIC TELEPHONE DIALING SYSTEM," "AUTODIALER,"
"PREDICTIVE DIALER," and "ROBOCALL" (collectively "ATDS")**, as those terms are used

23  herein, refers to and means, but is not limited to, equipment which has the capacity— **(1)** to store or
produce telephone numbers to be called, using a random or sequential number generator; **(2)** to dial

24  such numbers; **(3)** hardware, when paired with certain software, has the capacity to store or produce
numbers and dial those numbers at random, in sequential order, or from a database of numbers; **(4)**

25  equipment that dials numbers and, when certain computer software is attached, also assists in
predicting when an agent will be available to take calls; and, **(5)** a system that need not actually store,

26  produce, or call randomly or sequentially generated telephone numbers, but only have the capacity

27  to do it.

28  **-30-**

115. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in, or caused to be engaged in *illegal, unauthorized and deceptive **telemarketing and solicitation telephone calls*** to Plaintiff's residential and wireless telephone numbers, subsequent to Plaintiff placing his telephone numbers on the National DO-NOT-CALL Registry.

116. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Plaintiff owned, operated and controlled a residential telephone with the assigned telephone number of 702.341.1776.

117. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Plaintiff owned, operated and controlled a cellular telephone with the assigned telephone number of 702.893.1776.

118. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) owned, operated and/or controlled "customer premises equipment" as defined by the TCA, 47 U.S.C. § 153(16).

119. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in "interstate communications" as defined by the TCA, 47 U.S.C. § 153(28)."[36]

120. That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in, or caused to be engaged in "[tele]communications" as defined by the TCA, 47 U.S.C. § 153(50).[37]

. . .

. . .

---

[36]Communications Act of 1934, Public Law No. 416, June 19, 1934 (Title I, Sec. 3(e)).
[37]*Also see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

1    **121.**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

2    that Defendants, and each of them (either individually or in concert with others, and either directly

3    or indirectly) utilized, controlled, operated and authorized the utilization of one (1) or more

4    "Automatic Telephone Dialing Systems"— as defined by, but not limited to 47 U.S.C. § § 227(a)(1),

5    227(a)(1)(A) & (B) and 47 C.F.R. 64.1200(f)(1)[38]— to place, or cause to be placed *illegal,*

6    *unauthorized and deceptive **autodialed telemarketing and solicitation telephone calls*** to Plaintiff's

7    residential and wireless telephone numbers (702.341.1776 / 702.893.1776) without first obtaining

8    Plaintiff's *written* consent.

9    . . .

10    . . .

11    . . .

12

13

14

15

16

17

18    _____

19    [38]**The term "AUTOMATIC TELEPHONE DIALING SYSTEM," "AUTODIALER,"
     "PREDICTIVE DIALER," and "ROBOCALL" (collectively "ATDS"),** as those terms are used
20    herein, refers to and means, but is not limited to, equipment which has the capacity— **(1)** to store or
     produce telephone numbers to be called, using a random or sequential number generator; **(2)** to dial
21    such numbers; **(3)** hardware, when paired with certain software, has the capacity to store or produce
     numbers and dial those numbers at random, in sequential order, or from a database of numbers; **(4)**
22    equipment that dials numbers and, when certain computer software is attached, also assists in
     predicting when an agent will be available to take calls; and, **(5)** a system that need not actually store,
23    produce, or call randomly or sequentially generated telephone numbers, but only have the capacity
     to do it. The Federal Communication Commission (**"FCC"**) has emphasized that the definition of
24    "automatic telephone dialing system" covers any equipment that has the specified capacity to
     generate numbers and dial them without human intervention whether or not the numbers called
25    actually are randomly or sequentially generated or come from a calling list. As noted, the FCC has
     used "robocall" to refer both to calls placed using an automatic telephone dialing system and to
26    prerecorded calls without reference to whether such prerecorded calls are made with an autodialer.
27

28                                                     -32-

**122.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) employed, or caused to be employed, one or more ATDS' to "willfully" or "knowingly"[39] target Defendants' *illegal, unauthorized and deceptive* telemarketing and solicitation telephone call to Plaintiff's residential and wireless telephone numbers without first obtaining Plaintiff's written consent to receive such calls.

**123.**   That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), in violation of the regulations prescribed, altogether failed to establish and implement reasonable practices and procedures to effectively prevent Defendants' *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls to Plaintiff's residential and wireless telephone numbers.

---

[39] Albeit the TCPA does not define the term "willfully," in the "willfully or knowingly" standard set forth in Section 227(b)(3)(C)— Section 312, Title 47, of the U.S.C. defines "willful." There, "willful" is defined as the "conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter, or by a treaty ratified by the United States." Section 312(f)(1). Title 47, U.S.C. Also see the Communications Act of 1934, Section 151 et seq., Title 47, U.S.C., which is the Act the TCPA derived from. Hence, to establish a "willful" violation under the TCPA, for the award of treble damages, Plaintiff need not prove that Defendants knew it violated the law when it placed, or caused to be placed autodialed or pre-recorded calls to Plaintiff's wireless telephone— only that Defendants knew the calls were being placed - - and Defendants have admitted that they "knew the calls were being placed."
In *Bryan v. United States* (1998), 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197, the United States Supreme Court explained that "'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.' [*Boyce Motor Lines, Inc. v. United States* (1952), 342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367.] * * * Thus, unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." (Footnote omitted.) Id. at 193, 118 S.Ct. 1939, 141 L.Ed.2d 197.  Also see *United States v. Cohen* (C.A.2, 2001), 260 F.3d 68, 76 (it matters only that defendant knowingly committed the deeds forbidden by statute, not that he intended to violate the statute). Accordingly, for an award of treble damages under the TCPA, the term "knowingly" requires that liability be imposed even without Defendants' knowledge that the conduct violated the statute. To establish a "knowing" violation of the TCPA, for an award of treble damages, Plaintiff must prove only that the Defendants knew of the facts that constituted the offense. Such knowledge of the "facts that constitute the offense" does not mean that Defendants must know that certain conduct actually violates a law.

124.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants' *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls to Plaintiff's residential and wireless telephone numbers constituted a "communication" as defined by 47 U.S.C. § 227(b)(1)(A) of the TCPA.[40]

125.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that each and every act and omission of Defendants were undertaken wantonly, willfully, negligently, maliciously, intentionally, with malice and oppression, and gross and reckless disregard of the rights of the Plaintiff, and all applicable laws.

126.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that, as a result of the acts and omissions of Defendants, and each of them, and in order to punish Defendants for their *malicious and illegal conduct*, as well as to deter Defendants from committing similar acts in the future, Plaintiff is entitled to recover any statutory, actual, punitive and exemplary damages for Defendants' NRS, R&R, TCA and TCPA violations— in amounts to be determined at trial.

127.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants neither maintained, nor maintains procedures designed to comply with the Telephone Consumer Protection Act of 1991, Public Law 102-243, which amended the Communications Act of 1934 by adding a new section 47 U.S.C. § 227 *et seq.*

128.    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants neither maintained, nor maintains procedures designed to comply with Nevada's Revised Statutes.

129..    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that at all times material and relevant hereto, each and every act and omission of Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) were

[40]The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call in that it is defined as "to communicate with or try to get into communication with a person by telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

-34-

1  undertaken wantonly, willfully, negligently, maliciously, intentionally, with malice and oppression,

2  and gross and reckless disregard of the rights of the Plaintiff.

3  ## VI.

4  ### FIRST CLAIM FOR RELIEF

5  ### (Defendants Violations of the TCA and TCPA)

6    Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred

7  and twenty-nine as aforementioned.

8    **130.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

9  that Defendants, and each of them (either individually or in concert with others, and either directly

10  or indirectly) are violative of federal acts, including, but not limited to the Telephone Consumer

11  Protection Act of 1991, Public Law 102-243, December 20, 1991, which amended Title II of the

12  Communications Act of 1934, 47 U.S.C. § 201 et seq., by adding a new section, 47 U.S.C. § 227;

13  Title 47 -Telecommunication Chapter I -Federal Communications Commission Part 64

14  ¡Miscellaneous Rules Relating to Common Carriers -Subpart L -Restrictions on Telephone

15  Solicitation Sec. 64.1200, Delivery Restrictions, and The Communications Act of 1934, 47 U.S.C.

16  § 151, et seq.

17    **131.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

18  that Defendants, and each of them (either individually or in concert with others, and either directly

19  or indirectly) wantonly, willfully, negligently, maliciously and intentionally failed to comply with

20  the requirements of Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq., the Rules

21  and Regulations Implementing the TCPA, 47 C.F.R. 64.1200 et seq.,and The Communications Act

22  of 1934, 47 U.S.C. § 151, et seq.

23    **132.** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains

24  that Defendants, and each of them (either individually or in concert with others, and either directly

25  or indirectly), *illegally utilized* one (1) or more Automatic Telephone Dialing Systems that had

26  capacity to store or produce telephone numbers using random or sequential number generation, and

27  used said ATDS to dial and call the telephone numbers assigned to Plaintiff's residential and cellular

28  telephone.

133.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) initiated, or caused the initialization of three (3) *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls to Plaintiff's residential and wireless telephone numbers without first obtaining, either orally or in writing, the "prior express consent" of the Plaintiff to cause such calls to Plaintiff's telephone numbers, thereby violating, but not limited to, the TCPA, 47 U.S.C. § 227(b)(1)(B), (b)(1)(iii) and (c)(5).

134.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) initiated, or caused the initialization of three (3) *illegal, unauthorized and deceptive* autodialed telemarketing and solicitation telephone calls to Plaintiff's residential and wireless telephone numbers using one (1) or more Automatic Telephone Dialing Systems which was not in compliance with the technical and procedural standards prescribed by the TCPA, and thereby violated the 47 U.S.C. § 227(d)(1)(A).

135.     That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that the TCPA prohibits unsolicited autodialed telemarketing and solicitation calls  to wireless telephones—

> "**It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) **to make any call** (**other than a call** made for emergency purposes or **made with the prior express consent of the called party**) **using any automatic telephone dialing system...**—
>
> *            *            *
>
> (iii) **to any** telephone number assigned to a paging service, **cellular telephone** service, specialized mobile radio service, or other radio common carrier service, **or** any service for which the called party is charged for the call....". 47 C.F.R. § 227(b)(1)(A)(iii). See also, 47 C.F.R. § 64.1200(a)(1)(iii). **(Emphasis added).**

-36-

136.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) *completely failed* to comply with the mandates of 47 U.S.C. §§ 227(c)(5)[41] & (6) that states, in pertinent part:

(5) PRIVATE RIGHT OF ACTION.—**A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity** in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

(6) RELATION TO SUBSECTION (b).—The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b).
**(Emphasis added).**

137.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that under the FCC's amended regulations, *effective October 16, 2013,* the prior express written consent of the called party must [first] be obtained. See, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278, ¶ 68 (Feb. 15, 2012) **("2012 Report and Order")**("Once our written consent rules become effective, however, an entity will no longer be able to rely on non-written forms of express consent to make...telemarketing calls, and thus could be liable for making such calls absent prior written consent.").

---

[41]Section 227 (of the TCPA) also provides for a separate private right of action under subsection (c)(5), which **deals with live telephone calls, not with pre-recorded or artificial messages**. Under subsection (c), in order to have a private right of action, the recipient must receive more than one phone call in a 12-month period. See *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 FCC LEXIS 3673, at ¶ 205 (July 3, 2003) **(recognizing that Section 227 contains two different private rights of action**: one for automated or pre-recorded messages and fax transmissions in subsection (b)(3) **and one for live telephone calls in (c)(5)**). *Reichenbach v. Chung Holdings, LLC*, 823 N.E.2d 29, 159 Ohio App.3d 79 (Ohio App. Dist.6 11/05/2004).

138.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the FCC has defined what amounts to "prior express written consent"— specifically, *effective October 16, 2013*, "prior express written consent" will mean an agreement,[42] in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

139.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) *completely failed* to comply with the mandates of 47 C.F.R. § 64.1200, that states, in pertinent part:

   (c) **No person or entity shall initiate any telephone solicitation to:**
                        *        *        *

   (2) **A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry** of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. **(Emphasis added).**

140.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that no Established Business Relationship **("EBR")** ever existed between the Plaintiff and any of the above-named Defendants.

. . .

. . .

. . .

---

[42]The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (i) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (ii) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods or services. Finally, the definition notes that "the term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

141.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, *assuming arguendo*, an EBR had been established between Plaintiff and Defendants, the FCC has *eliminated* the EBR exemption as of October 16, 2013.

> "...we conclude that the public interest would be served by eliminating the established business relationship exemption for telemarketing calls. As such, telemarketing calls to residential lines will require prior written consent, even where the caller and called party have an EBR." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order Adopted February 15, 2012, @36.

142.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the acts and omissions of Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) were done *unfairly, unlawfully, intentionally, deceptively and fraudulently* and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

143.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the acts and omissions of Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) were not acted or omitted pursuant to 47 C.F.R. 64.1200(a)(1), (2); 47 C.F.R. 64.1200(c)(2); 47 C.F.R. 64.1200(f)(2) (regarding "emergency purposes"); nor 47 C.F.R. 64.1200(f)(3) (regarding "established business relationships").

144.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that as a causal, direct and legally proximate result of Defendants' violations of the 47 C.F.R. 64.1200 et seq., the TCA and the TCPA, the Defendants, and each and every one of them harassed, annoyed and abused Plaintiff, and intentionally invaded Plaintiff's expectation of privacy and intrusion into the solitude and seclusion expected by Plaintiff in his home.

145.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the acts and omissions of Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), were done unfairly, unlawfully, intentionally and deceptively with the express and sole purpose of unfairly, unlawfully, intentionally and deceptively induce Plaintiff to purchase Defendants' products and/or services.

**146.**     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the acts and omissions of Defendants, and each of them (either individually or in concert with others,   and either directly or indirectly), were done unfairly, unlawfully, intentionally and deceptively absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

**147.**     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that as a causal, direct and legally proximate result of the above violations of the TCA, TCPA and 47 C.F.R. § 64.1200 et seq., the Defendants, and each and every one of them are liable to the Plaintiff for statutory damages, punitive/exemplary damages, treble damages, and all fees and costs incurred by the Plaintiff as a consequence of this litigation.

**148.**     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the foregoing despicable conduct, acts and omissions of Defendants, and each of them, were undertaken, wantonly, willfully, knowingly, negligently, maliciously, intentionally and in gross, reckless and conscious disregard of the rights of the Plaintiff.

**149.**     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff, for Defendants' failure to comply with the TCPA, is entitled to FIVE HUNDRED DOLLARS AND NO CENTS ($500.00) for each violation therein. 47 U.S.C. § 227(c)(5).

**150.**     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that each of Defendants' two (2) *illegal, deceptive and harassing telemarketing and solicitation telephone calls to Plaintiff' landline telephone number* were violative of, but not limited to the TCPA, 47 U.S.C. § 227(c)(5), for which Plaintiff is entitled to statutory damages in the total amount of, but not limited to ONE THOUSAND DOLLARS AND NO CENTS ($1,000.00).

. . .

. . .

. . .

**151.**   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that (because) each of Defendants' two (2) *illegal, deceptive and harassing telemarketing and solicitation telephone calls to Plaintiff' landline telephone number* were caused *"willfully"*[43] or *"knowingly,"* [that] Plaintiff is entitled to *treble damages* in the amount of THREE THOUSAND DOLLARS AND NO CENTS ($3,000.00). TCPA, 47 U.S.C. § 227(c)(5).

**152.**   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff, for Defendants' failure to comply with the TCPA is entitled to FIVE HUNDRED DOLLARS AND NO CENTS ($500.00) for each violation therein. 47 U.S.C. § 227(b)(3).

**153.**   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants' one (1) *illegal, deceptive and harassing telemarketing and solicitation telephone calls to Plaintiff' wireless telephone number* were violative of, but not limited to the TCPA, 47 U.S.C. § 227(b)(3) for which Plaintiff is entitled to statutory damages in the total amount of, but not limited to FIVE HUNDRED DOLLARS AND NO CENTS ($500.00).

**154.**   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that (because) each of Defendants' one (1) *illegal, deceptive and harassing telemarketing and solicitation telephone calls to Plaintiff' wireless telephone number* were caused *"willfully"*[44] or *"knowingly,"* [that] Plaintiff is entitled to *treble damages* in the amount of ONE THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($1,500.00). TCPA, 47 U.S.C. § 227(B)(3).

**155.**   That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff, for Defendants' failure to comply with 47 C.F.R. § 64.1200 et seq., is entitled to FIVE HUNDRED DOLLARS AND NO CENTS ($500.00) for each violation therein. *See Charvat v. Ryan*, 168 Ohio App.3d 78, 2006-Ohio-3705; *Burdge v. Association Health Care Management, Inc.*, No. 08-3282, 2009 WL 414595, at *3 (S.D.Ohio Feb. 18, 2009).

---

[43]**"Willful" defined:** If the caller's intent was to make a call, and they didn't call by accident, *the call was willful* under the statute. 47 U.S.C. 312(f)(1).
[44]**"willful" defined:** If the caller's intent was to make a call, and they didn't call by accident, *the call was willful* under the statute. 47 U.S.C. 312(f)(1).

1    **156.**    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains

2    that each of Defendants' three (3) *illegal, deceptive and harassing telemarketing and solicitation*

3    *telephone calls to Plaintiff' landline and wireless telephone numbers* were violative of, but not

4    limited to the 47 C.F.R. § 64.1200(c)(1) & (2), for which Plaintiff is entitled to statutory damages

5    in the total amount of, but not limited to ONE THOUSAND-FIVE HUNDRED DOLLARS AND

6    NO CENTS ($1,500.00).

7    **157.**    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains

8    that, because the three (3) *illegal, unauthorized and deceptive* telemarketing and solicitation

9    telephone calls to Plaintiff were placed, or caused to be placed "*willfully*" or "*knowingly,*" and in

10    violation of 47 C.F.R. 64.1200(c)(1) & (2), Plaintiff is entitled to *treble damages* of FOUR

11    THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($4,500.00).

12    **158.**    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains

13    that each of Defendants' three (3) *illegal, deceptive and harassing telemarketing and solicitation*

14    *telephone calls to Plaintiff' telephone numbers* were violative of, but not limited to the 47 C.F.R.

15    § 64.1200(f)(2) & (3), for which Plaintiff is entitled to statutory damages in the total amount of, but

16    not limited to ONE THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($1,500.00).

17    **159.**    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains

18    that, because the three (3) *illegal, unauthorized and deceptive* telemarketing and solicitation

19    telephone calls to Plaintiff were placed, or caused to be placed "*willfully*" or "*knowingly,*" and in

20    violation of 47 C.F.R. 64.1200(f)(2) & (3), Plaintiff is entitled to *treble damages* of FOUR

21    THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($4,500.00).

22    **160.**    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains

23    that each of Defendants' three (3) *illegal, deceptive and harassing telemarketing and solicitation*

24    *telephone calls to Plaintiff' telephone numbers* were violative of, but not limited to the 47 C.F.R.

25    § 64.1200(d)(1), for which Plaintiff is entitled to statutory damages in the total amount of, but not

26    limited to ONE THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($1,500.00).

27

28

161.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, because the three (3) *illegal, unauthorized and deceptive* telemarketing and solicitation telephone calls to Plaintiff were placed, or caused to be placed *"willfully"* or *"knowingly,"* and in violation of 47 C.F.R. 64.1200(d)(1), Plaintiff is entitled to *treble damages* of FOUR THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($4,500.00).

162.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, as a result of the foregoing acts and omissions of each Defendant, and in order to punish each Defendant for their malicious conduct, as well as to deter each Defendant from committing similar acts in the future, Plaintiff is entitled to recover punitive/exemplary damages from each Defendant, in an amount to be determined at trial.

## VII.

### SECOND CLAIM FOR RELIEF

### (Defendants Violations of State Acts)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and sixty-two as aforementioned.

163.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, at all times material and relevant hereto, Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of, but not limited to 41.600(e), 42.005, 201.255(2), 228.540-228.620, 597.812-597.818,598.0903-598.0999 (including, but not limited to 598.0915(15), 598.0916, 598.0918, 598.092, and 598.0923(3)), 598.0977, 599B.080-599B.145, 599B.270-599B.300 and 707.910(2)-707.920, as amended, each of which, in-part, prohibits a businesses from engaging in "Deceptive Trade Practices."

164.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Plaintiff, as a victim of consumer fraud, is entitled to relief pursuant to NRS 41.600, that, in pertinent part states:

1.    An action may be brought by any person who is a victim of consumer fraud.

-43-

2.     As used in this section, "consumer fraud" means:

     *   *   *

   (d)  A deceptive trade practice as defined in NRS 598.0915
      to 598.0925, inclusive.

165. That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, at all times material and relevant hereto, Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of NRS 598.0977, that states, in pertinent part:

  If an elderly...person suffers damage or injury as a result of a deceptive trade practice, he or his legal representative, if any, may commence a civil action against any person who engaged in the practice to recover the actual damages suffered by the elderly or disabled person, punitive damages, if appropriate, and reasonable attorney's fees.[45]

166. That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, at all times material and relevant hereto, Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of, but not limited to NRS 201.255(2):

  Every person who makes a telephone call with intent to annoy another is, whether or not conversation ensues from making the telephone call, guilty of a misdemeanor.

167. That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, at all times material and relevant hereto, Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are, in pertinent part, violative of, but not limited to NRS 598.0923(1) & (3), that in pertinent part states—

  A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:

    1.  Conducts the business or occupation without all required state, county or city licenses.

      *   *   *

    3.  Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

---

[45]NRS 598.0933 "Elderly person" defined. "Elderly person" means a person who is 60 years of age or older.

-44-

168.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the foregoing despicable conduct, acts, and omissions of Defendants, were undertaken wantonly, willfully, negligently, maliciously, intentionally and in gross, reckless and conscious disregard of the rights of the Plaintiff.

169.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, as a result of the foregoing acts and omissions of each Defendants, and in order to punish each Defendants for their malicious conduct, as well as to deter each Defendant from committing similar acts in the future, Plaintiff is entitled to recover actual damages, punitive damages, and exemplary damages from each Defendant, in an amount to be determined at trial.

## VIII.

**Plaintiff is Entitled to Damages for Defendants' Invasion of Plaintiff's Privacy and Intrusion Into the Seclusion Expected by Plaintiff**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and sixty-nine as aforementioned.

170.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that the invasion of Plaintiff's privacy and intrusion into the seclusion expected by Plaintiff are each actual [concrete] injuries entitling Plaintiff to damages.

171.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that an invasion of privacy occurs when someone, such as Defendants, *unjustifiably intrudes* on Plaintiff's privacy and intrusion into the seclusion expected by Plaintiff.

172.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, in the instant matter, Plaintiff seeks to remedy, amongst their other *egregious acts*, Defendants' invasion of privacy, nuisance, trespass, and intrusion into Plaintiff's seclusion expected by Plaintiff in his home.[46]

---

[46]These kinds of torts have "long been heard by American courts, and the right of privacy is recognized by most states." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir.
(continued...)

173.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants (either individually, or in concert with others, and either directly, or indirectly) intentionally intruded upon Plaintiff's right to be left alone by causing *illegal, deceptive and unsolicited telemarketing and solicitation telephone calls* to Plaintiff's landline and wireless telephone numbers, ignoring the fact that Plaintiff's telephone numbers are on the National DO-NOT-Call Registry.

174.    That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that, by Defendants engaging in their *illegal telemarketing and solicitation telephone calls* to Plaintiff's landline and wireless telephone numbers, Plaintiff asserts that— Defendants, and each of them, in collusion with Defendants, and Defendants' officers, managers, employees, agents, representatives, affiliates, and Defendants' associates, and any other third parties affiliated or associated with Defendants— interfered with Plaintiff's right to be left alone; intruded upon Plaintiff's solitude and seclusion; and invaded Plaintiffs privacy in a manner that would be highly offensive to a reasonable person, and which was highly offensive to Plaintiff.

. . .

. . .

. . .

---

[46](...continued)

2017). Even more so, Congress [has] also found that **telemarketing is "intrusive," a "nuisance," and "rightly regarded" as an "invasion of privacy."** *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (internal citations and quotation marks omitted). Also see, *Nevada. PETA v. Berosini*, 110 Nev. 78, 867 P.2d 1121 (1994)("In PETA this court recognized the four torts of privacy set forth in Restatement (Second) of Torts § 652A (1977). One (1) of those *torts* is— "unreasonable intrusion upon the seclusion of another" (the other three (3) *torts* are not applicable to this matter).

## IX.

### THIRD CLAIM FOR RELIEF

### (Injunctive Relief)

Plaintiff repeats and realleges and incorporates by reference paragraphs one through one hundred and seventy-four as aforementioned.

**175.** That 47 USC 227(b)(3)(A) provides for injunctive relief (statutorily). It states:

> (3) Private right of action—
>
> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

**(emphasis added).**

**176.** That Plaintiff requests an Order enjoining Defendants, and each of them, from continuing their harassing, disruptive, illegal and unauthorized autodialed text messaging telephone calls to all cellular telephones, including Plaintiff's, without first complying, with no exception, to the Nevada Revised Statutes; the Telephone Consumer Protection Act; and the Rules and Regulations Implementing the TCPA.

### X.

### DEMAND FOR JURY TRIAL

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and seventy-six as aforementioned.

**177.** Please take notice that **Plaintiff DEMANDS TRIAL BY JURY** in this action.

**WHEREFORE,** Plaintiff respectfully prays that judgment be entered against each Defendant, severally, as follows:

1        **(i)**    For Injunctive relief pursuant to 47 USC 227(b)(3)(A) & (c)(5);

2        **(ii)**    For Defendants' two (2) *illegal, deceptive and harassing telemarketing and*

3    *solicitation telephone calls to Plaintiff' landline telephone number* violative of 47 U.S.C. §

4    227(c)(5), statutory damages in the total amount of ONE THOUSAND DOLLARS AND NO

5    CENTS ($1,000.00).

6        **(iii)**    For Defendants' two (2) *illegal, deceptive and harassing telemarketing and*

7    *solicitation telephone calls to Plaintiff' landline telephone number* that were caused "*willfully*" or

8    "*knowingly,*" Plaintiff, pursuant to 47 U.S.C. § 227(c)(5), is entitled to *treble damages* in the amount

9    of THREE THOUSAND DOLLARS AND NO CENTS ($3,000.00).

10       **(iv)**    For Defendants' one (1) *illegal, deceptive and harassing telemarketing and*

11   *solicitation telephone call to Plaintiff' wireless telephone number* violative of 47 U.S.C. § 227(b)(3),

12   statutory damages in the total amount of FIVE HUNDRED DOLLARS AND NO CENTS ($500.00).

13       **(v)**    For Defendants' one (1) *illegal, deceptive and harassing telemarketing and*

14   *solicitation telephone calls to Plaintiff' wireless telephone number* that were "*willfully*" or

15   "*knowingly,*" Plaintiff, pursuant to 47 U.S.C. § 227(B)(3), is entitled to *treble damages* in the

16   amount of ONE THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($1,500.00).

17       **(vi)**    For Defendants' three (3) *illegal, deceptive and harassing telemarketing and*

18   *solicitation telephone calls to Plaintiff' landline and wireless telephone numbers* violative of 47

19   C.F.R. § 64.1200(c)(1) & (2), Plaintiff is entitled to statutory damages in the total amount of ONE

20   THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($1,500.00).

21       **(vii)**    For Defendants three (3) *illegal, unauthorized and deceptive* telemarketing and

22   solicitation telephone calls to Plaintiff that were placed "*willfully*" or "*knowingly,*" Plaintiff, pursuant

23   to 47 C.F.R. 64.1200(c)(1) & (2), is entitled to *treble damages* of FOUR THOUSAND-FIVE

24   HUNDRED DOLLARS AND NO CENTS ($4,500.00).

25       **(viii)**    For Defendants' three (3) *illegal, deceptive and harassing telemarketing and*

26   *solicitation telephone calls to Plaintiff' telephone numbers* violative of 47 C.F.R. § 64.1200(f)(2)

27   & (3), Plaintiff is entitled to statutory damages in the total amount of ONE THOUSAND-FIVE

28   HUNDRED DOLLARS AND NO CENTS ($1,500.00).

1    **(ix)**    For Defendants three (3) *illegal, unauthorized and deceptive* telemarketing and

2    solicitation telephone calls to Plaintiff that were placed *"willfully"* or *"knowingly,"* Plaintiff, pursuant

3    to 47 C.F.R. 64.1200(f)(2) & (3), is entitled to *treble damages* of FOUR THOUSAND-FIVE

4    HUNDRED DOLLARS AND NO CENTS ($4,500.00).

5    **(x)**    For Defendants' three (3) *illegal, deceptive and harassing telemarketing and*

6    *solicitation telephone calls to Plaintiff' telephone numbers* violative of 47 C.F.R. § 64.1200(d)(1),

7    Plaintiff is entitled to statutory damages in the total amount of ONE THOUSAND-FIVE HUNDRED

8    DOLLARS AND NO CENTS ($1,500.00).

9    **(xi)**For Defendants' three (3) *illegal, unauthorized and deceptive* telemarketing and

10   solicitation telephone calls to Plaintiff that were placed, or caused to be placed *"willfully"* or

11   *"knowingly,"* Plaintiff, pursuant to 47 C.F.R. 64.1200(d)(1), is entitled to *treble damages* of FOUR

12   THOUSAND-FIVE HUNDRED DOLLARS AND NO CENTS ($4,500.00).

13   **(xii)**    For Defendants' violations of Nevada state laws, Defendants to pay Plaintiff all actual

14   damages, punitive damages and exemplary damages in an amount in excess of $10,000.00— to be

15   determined at trial;

16   **(xiii)**    For Plaintiff's fees and costs;

17   **(xiv)**    For such other and further relief as this Court deems just and proper.

18   DATED this 26th day of December 2017.

19

20                                    PAUL D.S. EDWARDS,

21

22                                    _____/s/ Paul D.S. Edwards_____
                                      Paul D.S. Edwards
23                                    713 Wheat Ridge Lane, Unit 203,
                                      Las Vegas, NV 89145
24                                    Landline Telephone:   702.341.1776
                                      Cellular Telephone:   702.893.1776
25                                    Email: p a u l d s e @ p a u l d s e d w a r d s . c o m
                                      Plaintiff *pro se*
26

27

28                                    **-49-**

# EXHIBIT 1

**Owner Essentials**

### ULTIMATE PROTECTION

| CONTRACT NUMBER | CONTRACT PLAN CODE | SELLER CODE |
|---|---|---|
| | | |

### REGISTRATION

### CONTRACT HOLDER INFORMATION

CONTRACT HOLDER NAME 1

CONTRACT HOLDER E-MAIL

CONTRACT HOLDER NAME 2

CONTRACT HOLDER 2 E-MAIL

ADDRESS

CITY, STATE, ZIP

PHONE NUMBER

### SELLING ACCOUNT INFORMATION

SELLER NAME

ADDRESS

CITY, STATE, ZIP

PHONE NUMBER

### COVERED VEHICLE INFORMATION

VEHICLE IDENTIFICATION NUMBER (VIN)                    CURRENT ODOMETER

YEAR          MAKE                              MODEL

CONTRACT PURCHASE DATE                    CONTRACT PURCHASE PRICE

TERM OF CONTRACT          Months: _____    Mileage: _____

### CONTRACT PERIOD

This coverage ends when (1) the term selected expires as measured from the Contract Purchase Date or (2) the mileage on Your Vehicle, as measured from zero (0) miles reaches the mileage limit for the term selected. All plans require a mandatory "Waiting Period" before Coverage takes effect. The "Waiting Period" = 30 days and 1,000 miles from the Contract Purchase Date and Odometer Mileage at Contract Purchase. 30 days and 1,000 miles will be added to the term of Your Contract.

| MANDATORY SURCHARGES | DEDUCTIBLE |
|---|---|
| ☐ Commercial Use Vehicles (if box is not checked, no coverage applies) | ☐ $50        ☐ $100 <br> If NO SELECTION is made, a $100 Deductible shall apply |

Administered by
**Enterprise Financial Group, Inc. (EFG)**
or one of it's affiliated companies (see DEFINITIONS for your state specific Administrator)
P.O. Box 167667, Irving, TX 75016, 1-844-548-2816

## CONTRACT

- This agreement (Contract) is between the Contract Holder (named on the Registration page) and the Service Contract Provider as defined under the Definitions section of this Contract. The Seller (issuing party) is not a party to this Contract and has no obligations to You in regards to the benefits provided.
- Your benefits and Our obligation to perform under this Contract are insured by an insurance policy with American Security Insurance Company, (PO Box 50355, Atlanta, Georgia 30302, (866) 306-6694).  If the benefits as described are not provided within sixty (60) days after You provide proof of loss covered by this Contract, or if the provider becomes insolvent or otherwise financially impaired, then You may make a direct claim against American Security Insurance Company or as identified by Your state of residence below.

  **For Connecticut, Florida, Iowa, Missouri, Nebraska, New Hampshire, New York, Oklahoma, and South Dakota residents only:** Our obligations are guaranteed by an insurance policy issued by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, 1-866-306-6694.

  **For Minnesota residents only**: Our obligations are guaranteed by an insurance policy issued by American Reliable Insurance Company, 11222 Quail Roost Drive, Miami, Florida 33157, 1-866-306-6694.
- The purchase of this Contract is not required in order for You to purchase or obtain financing for this Vehicle and is subject to verification.

## DEFINITIONS

- **Commercial Use Vehicle** means vehicles used for business, deliveries, construction, or commercial hauling.
- **Consumer, Customer, You and Your (Contract Holder)** means the person who is listed in the "Contract Holder Information" section on the registration page.
- **Covered Part** means an item listed as a Covered Part based on the coverage You selected, as defined in the section titled Covered Parts.
- **Covered Breakdown, Breakdown, or Mechanical Breakdown** means the event caused by the total failure of any Covered Part to work as it was designed to work in normal service, including normal wear and tear.
- **Insurance Policy and Reimbursement Insurance Policy** means a policy of insurance issued to the Service Contract Provider by an insurance company as stated in the "Contract" section above.
- **Lien Holder, Finance Company, and Funding Company** means the entity that funded this Contract to Us on Your behalf. The same entity retains rights to any refund due until such time You have completed repayment of your payment plan or installment agreement.
- **Lubricated Part** means a part that requires lubrication to perform its function.
- **Motor Vehicle and Vehicle** means the Vehicle identified by the Vehicle Identification Number (VIN) listed on the Registration page of this Contract.
- **Seller and Issuing Party** means the entity where You purchased Your Contract.
- **Service Contract and Contract** means this Service Contract for the Vehicle described on the Registration page.
- **Service Contract Provider, We, Us, and Our (Administrator / Obligor)** means Enterprise Financial Group, Inc. (EFG), P.O. Box 167667, Irving, TX 75016, 1-844-548-2816. www.efgcompanies.com.

  **For Delaware residents only:** We Us and Our means Reticulated Administrative Services, Inc. (RAS), P.O. Box 167667, Irving, TX 75016, 1-844-548-2816.

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

**For Florida residents only:** We, Us and Our means Enterprise Financial Group of Florida, Inc. (EFGF), P.O. Box 167667, Irving, TX 75016, 1-844-548-2816. Florida License #: 60102.

**For Louisiana and South Carolina residents only:** We, Us and Our means EFG Agency, Inc., P.O. Box 167667, Irving, TX 75016, 1-844-548-2816.

**For Texas residents only:** We, Us, and Our (The Service Contract Provider) means Enterprise Financial Group, Inc. (EFG), P.O. Box 167667, Irving, TX 75016, 1-844-548-2816.

## OUR OBLIGATIONS

If a Covered Mechanical Breakdown of Your Vehicle occurs during the term of this Contract, We will:

- Pay You or the repairer, for reasonable costs of repair or replacement of the Covered Parts and associated labor as required for the completion of the repair or replacement of those parts, which cause the Mechanical Breakdown. Allowed labor will be verified by the standard versions of the following nationally recognized labor guides (Motor, Mitchell, & AllData. Replacement parts, not to exceed manufacturer's suggested retail price, may be of like kind and quality. This may include the use of new, remanufactured or used parts as determined by Us.
- Reimburse You for a rental car at the rate of up to thirty dollars ($30) per day and a maximum of one hundred fifty dollars ($150) (five (5) days) per Mechanical Breakdown. To receive rental benefits You must supply Us with Your receipt from a licensed rental agency. No deductible will apply to this benefit. Maximum rental days include delays associated with Administrator required inspections or the shipment of parts.
- Reimburse You for lodging and meal expenses actually incurred by You if the covered repairs are completed more than one hundred (100) miles from Your primary residence and You are stranded overnight. The limit on this reimbursement is seventy-five dollars ($75) per day for any to three (3) days and a maximum of two hundred twenty-five dollars ($225) per breakdown.

## YOUR OBLIGATIONS

- **You should have the engine oil and filter changed within ninety (90) days after Contract Purchase Date, unless you have verifiable receipts that the Vehicle engine oil and filter were replaced within six (6) months prior to Contract Purchase Date. The minimum requirement on oil and filter changes thereafter is every six (6) months or 5,000 miles, whichever comes first, or You must follow the maintenance schedules in accordance with Your Vehicle's manufacturer recommendations. If applicable, replace the engine timing belt at the intervals specified by the Vehicle manufacturer. You must keep and make available verifiable service/ purchase receipts (indicating dates, mileage, and a description of Your Vehicle) which show that this maintenance has been performed within the time and mileage limits required. We will not reimburse for repair costs or expenses if You cannot provide accurate records proving that You have maintained the failed Covered Part.**

- **You or Your repair facility is required to obtain Our authorization prior to beginning any repair covered by this Contract.**

- **You are responsible for paying the deductible indicated on the Registration page of this Contract each time You have a Mechanical Breakdown. A one hundred dollar ($100) deductible per repair visit will apply unless the fifty dollar ($50) deductible**

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

option box has been marked and paid on the Registration page.

- **You are responsible for authorizing any tear-down or diagnosis time needed to determine if Your Vehicle has a Covered Breakdown. If it is subsequently determined that the repair is needed due to a Covered Breakdown, We will pay for appropriate diagnosis time (as determined by nationally recognized labor time guides). If the failure is not a Covered Mechanical Breakdown, then You are responsible for this charge.**

## OTHER IMPORTANT CONTRACT PROVISIONS

The aggregate total of Our liability for all benefits paid or payable during the term of this Contract shall not exceed the actual cash value of Your Vehicle at time of Contract purchase. Our limit of liability for any one (1) claim or Breakdown related in time or cause shall not exceed the actual cash value of Your Vehicle according to current National Automobile Dealers Association (NADA) standards at time of claim.

In return for Your payment for this Contract and subject to its terms, You will be provided with the protection described herein. After You receive any benefits under this Contract, We are entitled to all of Your rights of recovery against any manufacturer, repairer or other party who may be responsible to You for the costs covered by this Contract or for any other payment made by Us. If We ask, You agree to help Us enforce these rights unless transferred as provided in the Transfer section of this Contract. You also agree to cooperate and help us in any other matter concerning this Contract.

This Contract will terminate when You sell Your Vehicle unless transferred as provided in the Transfer Section or when this Contract is cancelled as outlined in the Cancellation Section.

**ARBITRATION. THE PARTIES TO THIS AGREEMENT ACKNOWLEDGE AND AGREE THAT THEY MAY HAVE HAD THE RIGHT TO LITIGATE DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT BEFORE A JUDGE AND JURY BUT HAVE WAIVED ANY SUCH RIGHTS IN FAVOR OF RESOLVING SUCH DISPUTES UNDER THE MEDIATION AND ARBITRATION PROVISIONS HEREIN.**

Should any controversy or claim arising out of or relating to this contract, or the breach thereof, the parties agree to first mediate the dispute amongst themselves in good faith prior to demanding arbitration or taking any further legal action. To initiate mediation, either party must provide notice, in writing, to the other party, of the request to mediate. The parties agree to mediate the matter amongst themselves by telephone conference within thirty (30) days of receipt of such notice.

If the dispute is not resolved by mediation, the parties agree that any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules, its Expedited Procedures, and its Supplementary Procedures for Consumer - Related Disputes, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The parties agree that a panel of one (1) arbitrator will be selected from a field of arbitrators provided by the AAA.

The filing party (the "claimant") must notify the other party (the "respondent"), in writing, that it wishes to arbitrate a dispute. The demand should briefly explain the dispute, list the names and addresses of the consumer and the business, specify the amount of money involved, and state what the claimant wants. The claimant must also send two copies of the demand to the AAA at the time it sends the

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

demand to the respondent. When sending a demand to the AAA, the claimant must attach a copy of the arbitration agreement from the consumer contract with the business. The claimant must also send the appropriate administrative fees and deposits. After the claimant pays the appropriate administrative fees and deposits associated with filing the demand, EFG shall pay the remainder of the fees and costs of the arbitration to the AAA on behalf of both parties. Nothing in this provision limits the arbitrator's power to award the arbitration fees and costs to either party as part of the award.

THE PARTIES EXPRESSLY WAIVE THEIR RIGHTS TO HAVE A COURT ADJUDICATE DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT INCLUDING, WITHOUT LIMITATION, IN SMALL CLAIMS COURT OR JUSTICE COURT, EXCEPT FOR THE SOLE PURPOSE OF CONFIRMING AND ENFORCING AN ARBITRATION AWARD OR ENFORCING THIS PROVISION. THE PARTIES EXPRESSLY WAIVE THEIR RIGHTS TO JURY TRIAL OF ANY DISPUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT. SHOULD EITHER PARTY BREACH THE ABOVE PROVISIONS BY FILING SUIT IN A COURT OF LAW, THAT PARTY SHALL BE RESPONSIBLE FOR THE COSTS AND FEES INCURRED TO ENFORCE THE MEDIATION AND ARBITRATION PROVISIONS. IF ANY PORTION OF THE MEDIATION AND ARBITRATION PROVISIONS ARE HELD ILLEGAL OR UNENFORCEABLE IN A JUDICIAL PROCEEDING, SUCH PORTION OF THE MEDIATION AND ARBITRATION PROVISIONS SHALL BE SEVERED AND SHALL BE INOPERATIVE, AND THE REMAINDER OF THE MEDIATION AND ARBITRATION PROVISIONS SHALL REMAIN OPERATIVE AND BINDING ON THE PARTIES.

GOVERNING LAW. THE PARTIES AGREE THAT THIS CONTRACT, INCLUDING THE MEDIATION AND ARBITRATION PROVISIONS, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICTS OF LAWS. BOTH PARTIES, JOINTLY AND SEPARATELY, UNDERSTAND THAT SOME OR ALL OF THE TERMS OF THIS CONTRACT SHALL BE PERFORMED IN THE STATE OF TEXAS AND HEREBY IRREVOCABLY CONSENT TO PERSONAL JURISDICTION IN THE STATE OF TEXAS FOR THE PURPOSE OF GOVERNING, CONSTRUING, AND RESOLVING DISPUTES CONCERNING THIS CONTRACT. FURTHER, THE PARTIES AGREE THAT THE PROPER VENUE FOR THE RESOLUTION OF ANY DISPUTE OVER THIS CONTRACT SHALL BE DALLAS COUNTY, TEXAS.

Severability. If any provision of this Contract is held illegal or unenforceable in a judicial proceeding, such provision shall be severed and shall be inoperative, and the remainder of this Contract shall remain operative and binding on the Parties.

## IF YOU HAVE A MECHANICAL BREAKDOWN, YOU MUST CALL 1-844-548-2816

If You have a Mechanical Breakdown, You must follow this procedure:

(1) Use all reasonable means to protect Your Vehicle from further damage. This may require You to stop Your Vehicle and call for roadside assistance to have the Vehicle towed. Any operation of the Vehicle that results in further damage related to the original Mechanical Breakdown or Failure shall be considered negligence on Your part and any such further damage shall not be covered under this Contract.

(2) Take Your Vehicle to the licensed repair facility of Your choice and have the repair facility contact Us at 1-844-548-2816 for instructions before ANY repairs are made.

(3) The Administrator reserves the right to inspect Your Vehicle prior to issuing any

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

authorization to the Repair Facility. In the event that the Administrator determines the Repair Facility is unable to perform a proper diagnosis or repair Your Vehicle, or there is a dispute between the Administrator and the Repair Facility, the Administrator reserves the right to move Your Vehicle to a repair facility of the Administrator's choice.

(4) Prior to proceeding with repairs, ensure the Repair Facility has been provided an authorization number for the covered repairs by the Administrator. Repairs performed without prior approval will not be honored (except for Emergency Repairs as described within).

(5) Furnish Us or the repair facility with such reasonable information that We may require. This includes receipts for car rental charges, lodging, meals, and signed service receipts (indicating dates, mileage, and a description of Your Vehicle) as required by this Contract.

(6) For simple repairs needed when the Administrator or Service Contract Provider is not available for prior authorization, please use the following procedure:

Emergency Repairs:

Refer to Your Contract to determine if the Breakdown is due to the failure of a Covered Part and there are no listed exclusions or wait period in effect that apply. For a simple repair (total cost of the repair and/or replacement must not exceed three hundred and fifty dollars ($350)), that is determined to be a Covered Part, authorize the repair facility to perform the repair, and call the Administrator or Service Contract Provider for instructions within five (5) business days, during normal business hours (Monday - Friday 8 a.m. - 7 p.m. CT, Saturday 8 a.m. - 2 p.m. CT). On major repairs (any repair where the total cost of repair and/or replacement exceeds three hundred and fifty dollars ($350)), determine the failure and repair costs and then contact the Administrator or Service Contract Provider on the next normal business day for an authorization before repairs are performed. (Utah Residents see "Special State Requirements and Disclosures" for additional clarifying language)

## COVERED PARTS

Repairs on all assemblies and parts are Covered on Your Vehicle; including eligible Electric Vehicles (EV) and Hybrid Vehicles with the exception of the following list of WHAT IS NOT COVERED and the items listed under the Exclusions section:

Paint, carpet, bright metal, trim, sheet metal, bumpers, body panels, glass, physical damage, molding, upholstery, lenses, sealed beams, light bulbs, headlamps, tail lamps, high mount stop lamps, L.E.D. light assemblies, fuses, circuit breakers, remote control consoles, radar detection devices, weather-strips, all exhaust components, the following emission components: purge valve/ solenoids, vacuum canister, vapor return canister, vapor return lines/valves, air pump/lines/valves, emission vapor sensors; gas cap/ filler neck, catalytic converter, battery, battery cables/harness, spark plugs, spark plug wires, fan belts, accessory drive belts, flexible hoses, distributor cap and rotor, shock absorbers, manual/hydraulic clutch assembly, friction clutch disc and pressure plate, weather strips, trim, outside ornamentation, frame and structural body parts, vinyl and convertible tops, canvas top, any convertible top assemblies, fabric top, fiberglass top, hardware or linkages, tires, wheel/rims, wheel balances, safety restraint systems (including air bags),

air and water leaks, wind noise, squeaks, rattles, all maintenance services including alignments, brake pads and shoes, brake rotors and drums, tune ups, coolants, lubricants; and hazardous waste fees.

## EXCLUSIONS - What this Vehicle Service Contract Does Not Cover

All parts not specifically listed under Covered Parts are not covered under this Contract. Normal maintenance items/repairs such as engine tune-ups and wheel or suspension alignments are not covered. Adjustments/Alignments to Covered Parts are not covered. In addition, this Contract provides no benefits or coverage and We have no obligation under this Contract for:

- Repairs and/or replacements of covered components that were performed without prior authorization from the Administrator, except for Emergency repairs completed within the provisions listed as stated in this Agreement.

- A Breakdown that is reasonably determined to have existed prior to the Contract purchase date or the date Coverage takes effect.

- A Breakdown if the information provided by You, or the Repair Facility cannot be verified as accurate or is found to be deceptively inaccurate.

- A Breakdown caused by lack of customary, proper, or manufacturer's specified maintenance.

- A Breakdown caused by contamination or lack of proper fuels, fluids, coolants or lubricants, including a Breakdown caused by failure to replace seals and gaskets in a timely manner.

- A Breakdown caused by or for damages resulting from overheating regardless of cause.

- Repair or replacement of any parts not necessary to the completion of the repairs for a Covered Breakdown.

- A breakdown of a Covered Part damaged by a non-Covered Part, or of a non-Covered Part damaged by a Covered Part.

- In the event a non-Covered Part is required to be replaced due to the replacement of a Covered Part that has failed, and the non-Covered Part has not failed, the non-Covered Part is not covered under this Contract.

- A breakdown resulting from engine sludge, carbon, pre-ignition, detonation, varnish, rust or corrosion (This provision does not apply for residents of Minnesota), foreign objects, dirt, dust, liquid, cracked rubber/neoprene parts, dry rot, road chemicals, abuse or alteration.

- Any adjustments, repositioning, refitting, realigning, and/or cleaning, including but not limited to repairs necessary to correct:
  trim fit, squeaks, rattles, idle, water leaks or wind noise.

- A Breakdown caused by towing a trailer, another vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the manufacturer.

- A gradual loss of performance which has resulted from normal operation and use

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

- (due to mileage and/or age) such as, but not limited to: valve guides, valves, piston rings, transmission clutch pack, discs and bands, unless worn beyond manufacturer tolerances. Fastening hardware (external nuts, bolts, springs, brackets etc.), exhaust system, injector cleaning, shop supplies, waste or disposal fees, any other miscellaneous shop charges.

- Modified vehicles are not eligible for coverage unless the modification(s) were recommended and approved by the manufacturer (Georgia residents see Special State Requirements).

- A Breakdown caused by off-roading, misuse, abuse, racing or any form of competition.

- Certain vehicles outlined on the Administrator's or Service Contract Provider's guidelines with the Seller are ineligible. This includes, but is not limited to: exotic vehicles, grey market vehicles, incomplete chassis, salvage or branded title vehicles, total loss vehicles, police, postal, taxi, and emergency vehicles, rental vehicles, tow vehicles, vehicles equipped with a snow plow, lifted vehicles, vehicles equipped with a flat bed and vehicles greater than 1 ton.

  Salvage, Branded or Total Loss Vehicles as defined herein. Any Vehicle that has ever been issued a "salvage" or "branded" title or similar title under any state's law; or has ever been declared a "total loss" or equivalent by any insurer or financial institution, such as a payment for a claim in lieu of repairs because the cost of repairs exceeded the cash value of the Vehicle is specifically excluded from coverage under this Contract.

- Vehicles used for business, deliveries, construction, or commercial hauling (unless the Commercial Use Vehicle box has been marked and paid on the Registration Page).

- A Breakdown caused by collision, fire, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood, other acts of nature, or acts of the public enemy or any government authority, and/or any hazard insurable under standard physical damage insurance policies.

- Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, storage charges, freight or other incidental or consequential damages or loss that results from a Breakdown.

- Any liability, cost or damages You incur or may incur to any third parties other than for Administrator or Service Contract Provider approved repair or replacement of Covered Parts which caused a Mechanical Breakdown.

- Any liability for damage to property, or for injury to or death of any person arising out of the operation, maintenance or use of Your Vehicle whether or not related to a Breakdown.

- Any cost covered by a repairer's or supplier's guarantee, or any cost which would be covered by a manufacturer's warranty, or that the manufacturer has announced its responsibility through any means including public recalls or factory service bulletins, whether or not the manufacturer remains a viable entity.

- Any part not covered by, or excluded by the original Vehicle manufacturer's warranty, whether or not the manufacturer remains a viable entity.

- A Breakdown not occurring in the United States or Canada.

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

Any mechanical problems that existed prior to, or at the time of the purchase of this Contract, whether or not the failure would be otherwise covered by the Contract. (This does not apply for residents of Arizona and Georgia. See the "Special State Requirements and Disclosures" section.)

## ROADSIDE COVERAGE - If You Require Roadside Assistance
## You Must Call 1-888-878-8307

You will be protected by ROADSIDE ASSISTANCE for the full term of this Contract. Roadside benefits include: towing, flat tire changes (using Your inflated spare), jump starts, vehicle fluid delivery, lockout assistance, and Concierge Services (as defined in this contract). You are responsible for the cost of any vehicle fluids and key cutting/replacement. The maximum benefit is one hundred dollars ($100) per incident. Roadside services administered by Brickell Financial Services-Motor Club, Inc. d/b/a Road America Motor Club, administrative offices at (7300 Corporate Center Drive, Suite 601, Miami, Florida 33126). (For Mississippi and Wisconsin Customers, services are provided by Brickell Financial Services-Motor Club, Inc. For California Customers, services are provided by Road America Motor Club, Inc. d/b/a Road America Motor Club.) All entities are collectively referred to as "Road America" throughout these terms and conditions. **For any Roadside Service You Must call (1-888-878-8307) (toll-free)** if Your covered Vehicle is in need of a NON-ACCIDENT RELATED Emergency Roadside Service where failure is due to a defect in material or workmanship. Benefits are available 24 hours a day, 365 days a year and are provided on a "Sign & Drive" basis. ONLY ROAD SERVICES PROVIDED THROUGH THIS 888 NUMBER WILL BE HONORED.

### ROAD AMERICA SAVINGS CONNECTION

Save up to 50% on hotel stays and receive savings for car rentals, theme parks, prescriptions, and much more using the Road America Savings connection website: **www.road-america.com/savings.** The activation code for first time users is 10999. If You have any issues logging on or using a discount code, call 1-866-211-8615, and a friendly customer service agent will be happy to assist You.

### CONCIERGE SERVICES

Road America specialized LifeStyle Services team will provide assistance in obtaining the following information or service assistance: (1.) event ticketing; (2.) travel assistance – including hotel referrals and reservations, restaurant referrals and reservations, and airline ticketing assistance and ground transportation coordination; (3.) ATM locator services; (4.) floral services; (5.) specialty gift buying services; and (6.) directions services including weather notifications. There is a limit of up to three (3) assistance events for concierge services.   **For assistance, please contact Our Customer Care Department at 1-888-878-8307 - Monday - Friday between 8:30 a.m. to 5:00 p.m.**

## ROAD HAZARD COVERAGE (TIRE ONLY) - If You have a Road Hazard,
## You Must Call 1-844-548-2816

If you have a Road Hazard as defined below, You will be reimbursed the cost to repair or, if non-repairable, the cost to replace a damaged tire(s) on Your Vehicle if damage is caused by a Road Hazard on a public roadway. Road Hazard is defined as objects and road conditions such as potholes, rocks, wood debris metal parts, plastic or composite scraps or any item causing tire damage other than wear and tear and those conditions excluded below. Prior-notification of repair is required; You must call 1-844-548-2816 for

Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

a tracking number prior to any tire(s) repair or replacement.

**For Tire Repair,** You will be reimbursed up to twenty dollars ($20) per occurrence for the full charges incurred for the repair.

**For Tire Replacement,** You will be reimbursed for a replacement tire(s) should the tire(s) become non-repairable due to impact breaks snags, punctures or other road hazards. You must have more than 3/32" tread depth remaining to be eligible for reimbursement. You will be reimbursed for up to one hundred dollars ($100) for each tire replacement per occurrence, up to a maximum aggregate per Contract term of four hundred dollars ($400).

**Non covered expenses include:**

- Tires that have 3/32" or less tread depth remaining.
- Repair or replacement covered by the manufacturer or other warranty or customer's primary insurance coverage.
- Replacement exceeding the manufacturer's vehicle specification, or when the manufacturer, by public announcement or recall, established its responsibilities to replacement for any manufacturer's defect.
- Damage caused by negligence, abuse, misuse, collision, manufacturer's defects, curb impact, drive or rim leaks, improper installation, dry rot in either sidewall or tread, tire chains, racing or off-road use, vandalism, malicious mischief, chain damage, fire or theft.
- Failure occurring from operating on any surface other than federal, state, county, city or municipality paved roads or highways.
- Vehicles used for shuttle, towing, wrecker service, dumping, lifting or hoisting, or off-road activity.
- Vehicles used for racing, rental, dealer loaners, limousine, taxi, police car or other emergency vehicle.
- Vehicles registered and/or otherwise normally operated outside the continental United States of America, Alaska, Hawaii and Canada.
- Tire(s) and/or wheels that do not meet the manufacturer's recommendations specific to Your Vehicle.
- Misuse occasioned from driving on tire(s) that are over inflated, under inflated or flat.
- Replacement of tire(s) without prior notification.

Prior notification is required before any tire repair or tire replacement can be made. For Tire coverage, YOU must call 1-844-548-2816 for a Tracking number. Within thirty (30) days of the covered incident, the following documentation must be mailed to the address listed below:

    A) Copy of this Service Contract

    B) Copy of tire repair invoice (if applicable)

    C) Copy of the tire replacement invoice including:

        1) tread depth of the damaged tire

        2) detailed description and cause of tire damage

        3) any other information reasonably requested

Required documents must be mailed to: P.O. Box 167667, Irving, TX 75016. The Administrator reserves the right to inspect all damaged tires.

**Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.**

## HOW THIS CONTRACT MAY BE TRANSFERRED

This Contract is subject to transfer, reassignment or sale. It is Your responsibility to notify Us in the event this Contract has been transferred to a subsequent owner stating the name, address and telephone number of the purchaser.

This provision is only available if You are the original Contract purchaser. Your rights and duties under this Contract may only be assigned if You sell Your Vehicle directly to another individual (excluding dealer trade-ins) and We receive Your written notification, as noted above, within thirty (30) days from the date of sale to the subsequent owner and upon payment to Us of a seventy-five dollar ($75) transfer fee, unless contrary to state law, insurance subrogation is waived by all parties (For Florida residents only, the transfer fee is forty dollars ($40)). Contracts purchased on a payment plan must be paid in full or payment obligations assigned to new Vehicle owner prior to transfer. Confirmation of the transfer acceptance by Us is required before coverage for the new owner is effective.

The coverage provided by this Contract cannot be renewed. This Contract is only transferable once by the first retail purchaser to the subsequent owner identified on the transfer form and therefore is not transferable to any additional owners.

## HOW THIS CONTRACT MAY BE CANCELLED INCLUDING REFUNDS AND CHARGES

The cancellation refund amount will be calculated in accordance with the provisions stated in this Contract. Please review STATE REQUIREMENTS AND DISCLOSURES as a cancellation addendum may be provided. An addendum is not provided for all states. We reserve the right to cancel this Contract and will not pay for a Mechanical Breakdown if:

- There is a material misrepresentation or fraud by You at the time of sale of this Contract.

- Your odometer fails, or for any reason does not record the actual mileage of Your Vehicle after purchase date and You do not have it fixed and the mileage certified within thirty (30) days of the failure date. (This provision does not apply to Nevada or Utah residents. See Your state specific cancellation language.)

- Your Vehicle meets any of the conditions listed in the "Exclusions" section as outlined above. (This provision does not apply to Nevada residents. See Nevada specific cancellation language.)

Failure to make monthly payments in a timely manner may result in cancellation of this Contract and no refund will be due. If this Contract was financed or purchased on a payment plan (by a funding company) the Finance Company or Funding Company shall be entitled to any refunds resulting from cancellation of this Contract for repossession of Your Vehicle, total loss of Your Vehicle or failure to make monthly payments in a timely manner, or early cancelation prior to balance being paid in full. You may cancel this Contract by providing written notice of Your intention to cancel, addressed to either the Seller or Us. The Seller is required to facilitate any refund due You. If You contact either the Seller or Us and provide written notice of cancellation within the first thirty (30) days after the Purchase Date, You are entitled to a full refund if You have not filed a claim against the Contract. If You contact the Seller or Us and provide written notice of cancellation more than thirty (30) days after the Purchase Date, We will keep a prorated amount of the Contract price based on the greater of days in force or miles driven compared to the total time and mileage of Your contract term, less claims paid,

plus a cancellation fee, if applicable. Any refund shall be paid to the Finance Company on Your behalf, and the refund may be deducted from Your balance owed. Should You have any issues with receiving a prompt refund of any amount due or any request to provide any additional verification, please contact Us to expedite and ensure a prompt refund, if due, is provided

**CANCELLATION FEE:  The cancellation fee is seventy-five dollars ($75).**  If You are a resident of **Alabama**, the cancellation fee is twenty-five dollars ($25).  If You are a resident of **Florida**, the cancellation fee is forty dollars ($40).  If You are a resident of **Arkansas, Idaho, Illinois, Louisiana, Missouri, Oklahoma or Texas** the cancellation fee is fifty dollars ($50).  There are no cancellation fees for residents of **District of Columbia, Georgia, and New Hampshire.**

---

### EFG COMPANIES PRIVACY POLICY

To review the General Privacy Policy of EFG Companies please visit Our website at http://www.efgcompanies.com/privacy or contact Us at 1-800-527-1984.



Prior to any service You must contact EFG at 1-844-548-2816 for instructions before ANY repairs are started on Your Vehicle.

**EXHIBIT 2**

| Subject: | Vehicle Protection Confirmation |
| --- | --- |
| From: | noreply@vehicleprotectiondepartment.net (noreply@vehicleprotectiondepartment.net) |
| To: | pauledwards@yahoo.com; |
| Date: | Monday, July 3, 2017 9:08 AM |

Having trouble viewing this email? View it in your browser.



### Extended Service Protection

Dear Paul Edwards,

Congratulations and thank you for your purchase! You have made an excellent decision in protecting your vehicle with the purchase of our extended service protection. Your Certificate of Coverage and ID Card should arrive within the next 10-14 business days.

Please review your information to confirm it is accurate. If you have any questions or require assistance, feel free to contact us at 800-949-8255.

Sincerely,
Vehicle Protection Department LLC

### Important Benefits

- Pays repair facility directly.
- Transferable coverage (n/a for all plans)
- Low deductible options
- Protects your financial investment.
- Rental and Towing options available on most plans.

### Email Sent To

Paul Edwards
713 Wheat Ridge Lane
Las Vegas, NV 89145

### Vehicle Summary

**Vehicle**
Make: 2014 Ford
Model: Fusion
Odometer: 47,200
Vin:

**Coverage Plan**
Plan: Ultimate
Term/Miles: 60/125,000
Expiration Date: 8/3/2022
Expiration Miles: 126,000
Deductible: $100

**Plan Cost**

| | |
| --- | --- |
| Subtotal: | $2,899.00 |
| Tax: | $0 |
| Total: | $2,899.00 |
| Down Payment: | $295.00 |
| Payments: | 18 |
| Monthly Payment: | 144.67 |

Vehicle Protection Department LLC and the Logo are registered trademarks of Vehicle Protection Department LLC
2024 N Broadway, 3rd Floor Santa Ana, CA 92706

### Attachments

- EFG NEW OE 2.24.17 SAMPLE_40100724_Xeosa7cu-914.pdf (931.44KB)